ALEXANDER H. KILCREASE *vs.* WILLIAM L. SHELBY.

A voluntary distribution of the effects of a decedent, made by the distributees
themselves, or by other persons chosen by them for that purpose, is valid and
binding, if the parties be capable of binding themselves, by contract or by
assent; *aliter*, however, where some of the distributees are minors, and
incapable of assenting to the distribution in a binding manner.

The doctrine, that an infant will be held bound by an act which the law
would have compelled him to perform, does not apply in the case of a volun-
tary distribution; for the law, though it would have coerced a distribution,
might not have made just such a one as was made by the parties.

Where a voluntary distribution is made, some of the distributees being infants,
and the adult distributees hold their distributive shares thus ascertained, until
some of the infants, on coming of age, disaffirm the voluntary distribution;
and another and different distribution then takes place under the authority of
the probate court, and is acquiesced in by all the parties, their rights will be
regulated by the last distribution.

A widow, having in her possession a portion of the personal estate of her de-
ceased husband, married a second time. Her second husband having died,
leaving her as executrix and another person as executor of his will, the exec-
utor filed a petition in the probate court to compel her to return the property
acquired by her from her first husband in her inventory of the effects of her
second husband. She resisted the application, denied that the property

14*

belonged to the estate of the testator, and claimed to hold it as a part of the estate of her first husband; and the case was decided in her favor by the probate court, in 1839. Afterwards, the voluntary distribution was set aside, on the application of one of the distributees who was a minor when it took place, and a new distribution was made under the authority of the probate court, the widow receiving a portion of the property set apart to her under the first distribution. She died in August, 1846, having disposed by will of the property thus acquired; and in March, 1847, the surviving executor of the second husband brought an action of detinue against the legatee for the property. The legatee pleaded the statute of limitations of six years. *Held*, that when, in 1839, the widow asserted, and the probate court adjudged, that she did not hold the property as executrix of her second husband, the statute commenced running, and that the present action was barred.

Where, against an action of detinue, the statute of limitations of six years had commenced running prior to the passage of the act of 1844, which reduced the limitation to three years, and the action is brought more than six years after the first act commenced running, and more than three years after the passage of the act of 1844, the defendant may plead, and be protected by either act.

Where a widow, having in her possession property of her deceased husband, constituting a portion of his undivided estate, married again before the passage of "the married woman's law," and survived her second husband, after whose death her portion of her first husband's estate was distributed to her; *held*, that her right to the property was unquestionable, and that the estate of her second husband had no claim thereto.

In error from the circuit court of Copiah county; Hon. Stanhope Posey, judge.

The facts of the case, as exhibited by the record, show that Thomas N. Shelby died in December, 1831, possessed of about forty negroes, including those sued for in this action, with the exception of Edmund, who was bought by his (Shelby's) son, Moses D. Shelby, after his father's death. He left surviving him a widow, Mary T., and four children, and a fifth child born after his death. In the fall of the year 1832 or 1833, a division of the negroes among the distributees of deceased was made by some of their neighbors, who were called upon to do so by Serena E. and Samuel Barnes her husband, and the widow Mary T. Shelby. By said division, Jack, Andy, Rachel, Harriet, Dave, Edmund, Andrew, and Nany were allotted to the widow. The other negroes specified in the declaration of plaintiff are natural increase of her allotment.

John R. Deen, one of the persons who made the division, testified that the division of the said negroes among the children and widow was considered by all fair and equal; and that Moses D. represented the younger children on that occasion; that the said widow took the possession of her slaves, and married William H. Kilcrease on the 10th of December, 1833. In January, 1834, they moved from Claiborne to Copiah county, and carried with them their said negroes allotted to the widow on said division; and the said William H. Kilcrease worked them and exercised control over them, and spoke of them as his own from the time of his marriage with the said Mary T. to the time of his death in July, 1838. Before his death, Kilcrease made a will, by which he gave to his wife the use, possession, and enjoyment of all his estate, real and personal, during her natural life, and one third thereof in fee simple, to be disposed of by will or otherwise, as she might think proper at her death, and named his wife, James Speed, and plaintiff, his executors. The will was probated by the widow and the plaintiff, who undertook to execute the trust of the will. On the 28th of January, 1839, Moses D. Shelby petitioned the probate court of Claiborne county for a distribution of the personal estate of his deceased father; and the said John Deen (who was one of the persons that made the first division), and four others, were appointed commissioners, who set apart the same negroes to the widow Kilcrease that were allotted to her upon the first division. Their increase were given to others, and she made her application at the same time for distribution and dower. On the 26th of July, 1846, the said Mary T. Kilcrease made her will, disposing of the property allotted to her, and died in August, 1846. The plaintiff in error, as surviving executor of the will of William H. Kilcrease, brought an action of detinue to recover the property divided out, when a verdict was found for the defendant; from which decision the plaintiff prayed a writ of error.

*E. G. Peyton,* for plaintiff in error,

Contended the decision of the court below was error, and

cited, Meigs, R. 559; *Lasseter & Wife* v. *Turner, adm. et al.* 1 Yerger, 415, 428; *Cabbe* v. *Martin*, 1 How. 563; *Baines* v. *McGee*, 1 S. & M. 208; 7 How. 311; *Scott* v. *James*, 3 How. 307; 2 Bouvier's Bacon, 362; *Fuller* v. *Young*, 1 Fairfield, 365; *Pinkham* v. *Gear*, 3 N. Hamp. 168; *Baker* v. *Baker*, 4 Greenleaf, 67; *Bavington* v. *Clarke*, 2 Penn. 115; 2 U. S. Dig. 537, sec. 63; 9 Law Rep. 467; *Zouch* v. *Parsons*, 3 Burrow, 1801; *Elliott* v. *Horn*, 10 Ala. 348; Macpherson on Inf. 456; Coke, Litt. 172; 41 Law Lib. 290; 24 Law Lib. 211; Lewin on Trusts & Trustees, 46; 2 Bacon, 21; 4 Bacon, 84; *Wade* v. *Grimes*, 7 How. 435; *Jones* v. *Littlefield*, 3 Yerger, 133; *Smith* v. *Wiggins*, 3 Stewart, 221; 2 Starkie, Ev. 493; *Burnley* v. *Lambert*, 1 Wash. (2d ed.) 398; *Burton* v. *Brushear*, 3 Marsh. 278.

*James H. Maury*, for defendant in error,

Cited 2 Kent's Com. 237; 7 How. 342; 8 S. & M. 229; 20 John. 576; Hutch. Dig. 670; *Kane* v. *Bloodgood*, 7 John. Ch. R. 90; *Wren* v. *Gardiner*, 1 How. 376.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The plaintiff, as surviving executor of William H. Kilcrease, brought an action of detinue for certain slaves, against the defendant, and, the jury having found for the defendant, the case comes up on a motion for a new trial on the evidence merely.

The property in dispute originally belonged to Thomas N. Shelby, who died in December, 1831, leaving a widow, Mary, and four children, infants, and one other was born after the death of the father. In 1832 or 1833, an informal division of the property was made by some of the neighbors, called in for that purpose by Barnes, who had married one of the distributees, and the widow. In this division, Moses D. Shelby, then himself a minor, professed to represent or act for the younger children, though he was not their guardian. Barnes received his share of the property, but the rest of it remained in possession of the widow. The negroes now claimed, were set apart or allotted to her by this division. In December, 1833, the

widow intermarried with plaintiff's testator, and in January, 1834, they removed from Claiborne, to Copiah county, taking these negroes as well as others, and also part of the children. Kilcrease used and spoke of the negroes as his own.   In 1838 he died, after having made a will, in which he gave all his property, real and personal, to his wife, during her life, and, by a subsequent clause, he gave her one third absolutely, and the other two thirds he disposed of after her death, and appointed his wife and plaintiff executrix and executor.   He left other negroes and real estate, besides those which had been allotted to his wife.   The widow, in 1839, returned an inventory of the other property, but did not include in it the negroes sued for, but kept all the property in her possession.   In April, 1839, her co-executor moved the probate court to compel her to return an inventory of the negroes claimed by her as part of the estate of her first husband, which application was resisted by her, and overruled by the court.

In January, 1839, M. D. Shelby filed his petition in the probate court, for distribution of his father's estate, which was granted.   At the same time, Mrs. Kilcrease also filed her petition for her distributive share and dower, in Thomas N. Shelby's estate, which was granted, and on these applications distribution was made, in which seven of the same negroes first allotted to her by the informal division, were again set apart to her, though their increase, being part of the negroes claimed in the declaration, were set apart to other distributees. This distribution was duly confirmed by the court.   In 1842, the co-executor again applied to the probate court to compel her to return an inventory of the negroes, as part of the estate of William H. Kilcrease, which she again refused to do, claiming them as as her separate property, and the court overruled the application; and she continued to hold and claim them as her own, until August, 1846, when she died, after having disposed of them by will, and they came into the possession of the defendant, as executor, he being also the principal legatee. This suit was brought on the 18th of March, 1847.

On this state of facts, it is most manifest that the plaintiff cannot recover, unless he can uphold the first distribution.

The wife survived her second husband, and on the principles heretofore settled, her right to the property is unquestionable, if it continued a part of the undivided estate of Thomas N. Shelby. *Wade* v. *Grimes*, 7 How. 425; *Harper* v. *Archer*, 8 S. & M. 229. That a voluntary distribution, made by distributees amongst themselves, or by other persons chosen by them for that purpose, is valid and binding, is beyond doubt if the parties be capable of binding themselves by contract, or by assent. But at the time of the voluntary distribution, four of the children of Shelby were minors, and some of them were very young. Not only so, but they seem to have had no agency in the matter. They gave no assent, even if such assent would have been binding on them. The doctrine is invoked, that an infant will be held bound by an act which the law would have compelled him to perform. It does not apply, because it cannot be said the law would have compelled just such a distribution as this, although it might have coerced distribution of the estate. And the partition was actually disaffirmed after some of the children became of age, and partition regularly made by order of court; and this was acquiesced in by the plaintiff. But this question is perhaps not very material, and the result must be the same, though we should be mistaken in this respect.

It seems that Mrs. Kilcrease never admitted these negroes to be a part of the estate of her husband, Kilcrease, but claimed them as part of the estate of her first husband, and this point was decided in her favor, by the probate court, in April, 1839, when her co-executor endeavored to coerce her to include them in an inventory. That was an adjudication that she did not hold the property as executrix. It was acquiesced in. She not only denied the trust, but her adverse right was sustained and adjudged. From that time the statute of limitations commenced running, and six years had elapsed before this suit was brought, and there is no escape from the operation of the statute of six years, which has been pleaded. Although under the act of 1844, the limitation is changed to three years, yet the last act expressly provides that the previous law may continue to run where it had commenced. Either act might have

been pleaded, as the last had been in operation more than three years before the action of detinue was brought.

Judgment affirmed.