Schee v. McQuilken.

———◆———

SCHEE v. McQUILKEN.

PLEADING.—*Counter-Claim.*—*Answer.*—A counter-claim filed to a complaint can not perform the double office of answer and counter-claim.

SAME.—*Practice.*—*Open and Close.*—Where simply a counter-claim is filed to a complaint, and the plaintiff files only a denial thereto, the defendant has the right to open and close the case.

SAME.—*Demurrer.*—*Motion to Make Certain.*—An objection, that a pleading is uncertain, can not be presented by demurrer, but only by a motion to make the pleading more certain.

REAL ESTATE.—*Tenants in Common.*—*Conveyance by One.*—Where one of several tenants in common of real estate conveys an interest in the same, the grantee takes only the interest of his grantor.

SAME.—*Lease by one Tenant for Benefit of All.*—*Infant.*—*Partition.*—*Guardian and Ward.*—*Action to Quiet Title.*—*Decedents' Estates.*—Certain real etate having been devised equally, in fee simple, to C., a married woman, and her minor children, and it being subject to sale for the payment of the testator's debts, she and her husband leased a portion of it to A., for a certain term, for a sum sufficient to pay such debts; and such debts having been paid therewith, and such minors having brought suit by their guardian, against her, for partition of such real estate, it was decreed by the court, by consent of the parties, that she should take a life-estate in the whole of such lands, and that the remainder in fee should revert to such minors. And she having conveyed her life-estate, and such guardian, by order of court, having conveyed such remainder, to B., the latter brought suit against A., to quiet title.

*Held,* that such decree of partition was valid; and,

*Held,* also, that B. took the land subject to A.'s lease during C.'s life, not exceeding, however, the period of the lease.

---

Schee v. McQuilken.

---

CONTRACT.—*Duress.*—*Subsequent Ratification.*—A contract made under duress is not, strictly speaking, void, but only voidable; it may be ratified by the party upon whom the duress was practised; and such ratification may be inferred from subsequent conduct.

SAME.—*By whom Duress may be Pleaded.*—The right to avoid a contract for duress is, as a general rule, personal, and none can take advantage of it but the party himself. Where a grantee purchases land, upon a part of which there is a lease for a term of years, made by his grantor, such grantee can not avoid the lease, on the ground that it was executed under duress.

From the Vigo Circuit Court.

*H. B. Jones, J. T. Scott, I. N. Pierce, S. C. Davis* and *S. B. Davis,* for appellant.

*S. B. Gookins, G. C. Duy, J. P. Baird, C. Cruft, R. Dunnigan* and *S. C. Stimson,* for appellee.

PERKINS, J.—Schee brought suit against McQuilken to quiet title.

The complaint of the plaintiff was for the quieting of the title to real estate, described thus: The south-east quarter of the north-west quarter of section eight, township twelve, range nine west, lying in Vigo county, State of Indiana.

It avers, that the defendant, McQuilken, claims some sort of title to an interest in six acres of said tract, of which he can give no further description than this, viz.: Commencing at a point on the west line of said tract, twenty-three rods north of the southwest corner thereof, and running from said point northwardly, along the west side of said described land, and on the east by the line at which a certain vein of coal crops out to the surface, far enough to embrace six acres, which claim is adverse to plaintiff's title to said real estate, and creates a cloud upon the same. Wherefore he prays that his title be quieted, and the defendant enjoined, etc.

The defendant, by counter-claim, asserted title, by virtue of a lease for twenty years, to a portion of the land, in which lease he alleged a mistake, which he prayed

might be corrected.    A copy of the so-called lease is as
follows :

" This indenture, made this 30th day of September, 1870,
between Jane E. Funk and William G. Funk, her hus-
band, party of the first part, and William McQuilken,
party of the second part, all of the county of Vigo and
State of Indiana, witnesseth :   That the said party of the
first part, for and in consideration of the sum of six hun-
dred dollars to them paid, the receipt of which is hereby
acknowledged, have bargained and sold, and do by these
presents grant, bargain, sell and convey, to the said party
of the second part, his heirs and assigns, all the upper
vein or stratum of coal, which underlies the following
tracts of land in Vigo county, Indiana, to wit:   Twelve
acres in the east half of the north-west quarter of sec-
tion eight, township twelve, range nine west, described
as follows, to wit: commencing at a point on the west
line of said tract, twenty-three rods north of the south-
west corner thereof, and running from said point north-
wardly, bounded on the west by said west line, and on the
east by the line at which the said vein of coal crops out
to the surface, far enough to embrace six acres; also,
commencing in the north line of the said tract, at a point
forty-three rods east of the north-west corner thereof,
and running from said point east, along said north line, to
where the same vein of coal crops out on said line, and
then extending southwardly from said line as a base;
bounded on the west by a line along which the coal crops
out, far enough to make six acres, together with the full
right, power and privilege to him, the said party of the
second part, his heirs and assigns, to strip the said coal
and take out and carry away the same, with full right of
ingress and egress and right of way in and upon and over
said premises for men and teams, to enable him to prose-
cute said work to his satisfaction.   Provided, however,
that said rights, powers and privileges shall terminate at
the end of twenty years from this date, and all the coal

then remaining in said territory shall revert to and become the property of the said party of the first part, their heirs and assigns.   Witness," etc.

" Jennie E. Funk,

" William G. Funk."

Duly acknowledged and recorded.

In the complaint, it will be observed, the plaintiff asked the quieting of his title against no one but McQuilken, and· the latter, in his counter-claim, disclaimed all title to the premises except what the instrument above copied gave him.

There was no answer of general denial to the plaintiff's complaint, and the counter-claim will not be held to perform a double office.   *Kimble* v. *Christie*, 55 Ind. 140.

There was no motion to make the counter-claim more certain, and it was rightly held sufficient on demurrer. *The Pennsylvania Co.* v. *Sedwick, post,* p. 333.

A general denial to the counter-claim was filed.

Trial by jury ; verdict for McQuilken.

The defendant, on his counter-claim, was rightly awarded the opening and closing of the trial.

Motions for a new trial, and in arrest of judgment, overruled, and judgment on the verdict.   The court rendered a decree correcting the lease and quieting McQuilken's title under it.   As to this action of the court, see *Halstead* v. *The Board, etc.*, 56 Ind. 363.

The evidence is in the record.

There was no exception taken to the decree.   The only general question for this court to decide in the case at bar is, has McQuilken a right to enjoy the privilege of his lease as against the plaintiff, Schee ?   Other particular questions will be noticed.   Schee's title, except as against the lease, is conceded by the decree.   The source from which the alleged titles of both parties are derived is the will of Alexander Conner.   We copy the will:

" Know all men by these presents, that I, Alexander Conner, of the county of Vigo, in the State of Indiana,

being in ill health, but of sound and disposing mind and memory, do make and publish this, my last will and testament, hereby revoking all prior wills by me at any time heretofore made:

"1. I give and bequeath unto my daughter, Jane E. Funk, and the children of her body, all the real estate that I may die seized of; and I also give and bequeath unto my said daughter, Jane E. Funk, all my personal effects, except so much thereof as will be sufficient to pay my just debts and funeral expenses, and also one thousand dollars to be paid to my sister, Jane Reed, for her services, taking care of me during my sickness."

The will was duly executed, and was probated on the 17th day of May, 1869.

Jane E. Funk, at the demise of said Conner, was the mother of two living children, viz.: William A. Funk and John W. Funk, who were infants. They were tenants in common of the real estate devised with their mother.

On the 30th day of September, 1870, as we have seen, said Jane E. Funk, one of the tenants in common, executed the instrument, called a lease, hereinbefore copied, to McQuilken. The lease was made by the advice of the administrator, to raise money to pay the debts of the estate, and obviate the necessity existing for the sale of real estate for that purpose by the administrator. The money paid for the so-called lease was applied equally to the benefit of all the tenants in common, by discharging debts for which their common property was liable. McQuilken went into possession. There is no evidence showing the richness or value of the vein of coal.

On the 14th day of September, 1871, partition of the land was decreed by the proper court between the tenants in common, in a suit for that purpose by the infant tenants, by their guardian, Wm. E. McLean, against Jane E. Funk, the adult tenant in common and mother of the

infant tenants, in which decree the mother was given a life-estate in the whole of the land, and the fee of the whole was divided between the infant tenants. The decree was made with the concurrence of all the parties, and has not been appealed from or vacated.

On the 8th day of September, 1873, Mrs. Funk conveyed by quitclaim deed all her interest in the premises to James Schee, the plaintiff in this suit; and on the 6th of October, 1873, McLean, the guardian of the two infant children of Mrs. Funk, on a guardian's sale ordered by the Vigo Circuit Court, conveyed in fee to the plaintiff, Schee, the interest of said children in said real estate.

It thus appears, that the plaintiff, Schee, on the 6th of October, 1873, had acquired the entire title to said real estate, subject only to the rights of McQuilken. It might be inferred from the evidence, that Schee purchased subject to McQuilken's lease, paying less for the land on account of it; but we disregard this circumstance in the decision we make.

What were the rights of McQuilken on the 6th day of October, 1873, the day that Schee obtained the title of the two infant tenants in common?

1. If the so-called lease of Jane E. Funk to McQuilken, made in 1870, was valid, his title to the land under it was valid.

2. If the partition subsequently made by the court, in September, 1871, was valid, then Schee's title, so far as appears by the record, was valid; as the estate for life, given to Jane E. Funk, enured to his benefit, in support of his title derived from her.

3. If all the tenants in common recognized McQuilken's title as valid, and sold to Schee subject to it, then his title, as against Schee, must be held valid.

We proceed to express our opinion upon the enumerated points.

We think the so-called lease of Jane E. Funk conveyed the legal title to but one-third of the premises em-

braced in it. Washburn Easements, 41. But we think the circumstances attending the execution of that lease presented a strong equitable case, justifying the court in making the partition that it did make. The lease was for the benefit of all the tenants ; they received the consideration for it; they all approved of it; they never appealed, and never sought to set it aside. And, under the circumstances, we think it was in the power of the court to make it. The court has power to adjust equities in partition suits. *Milligan* v. *Poole*, 35 Ind. 64; *Godfrey* v. *Godfrey*, 17 Ind. 6; 2 R. S. 1876, p. 344, *et seq.*, and notes.

The infants had a right to sue for partition, and, if the land could not be divided, to have it sold, and we think, with the consent of the parties, in view of the equities of the case, the court had power to decree the partition it did. Our statute provides, 2 R. S. 1876, p. 347, sec. 14, that, " In all proceedings under this act, guardians may act for their wards as their wards might have acted, being of age." And again, in the same volume of the statutes, p. 597, sec. 24, it is enacted, that " The guardian of any minor may join in, and assent to, a partition of the real estate of such minor under the direction of the court upon a petition for partition." See *Richards* v. *Richards*, 17 Ind. 636. The partition made in this case could have been made by adults. *Freeman* v. *Freeman*, 9 Heiskell, 301; *Kilcrease* v. *Shelby*, 23 Miss. 161; *Bavington* v. *Clarke*, 2 Penn. 115; *Overbach* v. *Heermance*, Hopkins, 337. See notes to *Elliott* v. *Horn*, Ewell's Leading Cases, 75, and *Schull* v. *Kennon*, 12 Ind. 34.

At all events, we are satisfied the partition made was not void. At most, it could be but erroneous and voidable; and, not having been avoided prior to the sale to Schee, the presumption is, it never will, if it could be avoided by the parties to it; and the purchaser from them, if he could in any case, can not in this avoid it. He bought with constructive notice, at least, of all the equities, and with actual notice of some of them. In

*Walsh* v. *Walsh*, 116 Mass. 377, it is said, in the opinion by Chief Justice GRAY: "An infant is ordinarily bound by acts done in good faith by his solicitor or counsel in the course of the suit, to the same extent as a person of full age. *Tillotson* v. *Hargrave*, 3 Madd. 494; *Levy* v. *Levy*, Ib. 245. And a compromise, appearing to the court to be for the benefit of an infant, will be confirmed without a reference to a master; and, if sanctioned by the court, can not be afterward set aside except for fraud. *Lippiat* v. *Holley*, 1 Beav. 423; *Brooke* v. *Mostyn*, 33 Beav. 457, and 2 De G., J. & S. 373.

"If the court does pronounce a decree against an infant by consent, and without inquiry whether it will be for his benefit, he is as much bound by the decree as if there had been a reference to a master and a report by him that it was for the benefit of the infant. *Wall* v. *Bushby*, 1 Bro. Ch. 484; 1 Dan. Ch. Pr. 164."

We think Schee purchased subject to McQuilken's lease, which lease, we think, is valid as against him, at all events, during the life of Jane E. Funk; and should that life continue for the twenty years named in the lease, McQuilken may hold for that period. We do not decide what might be the effect of the death of Jane E. Funk within the twenty years.

Many questions are discussed by counsel touching the admissibility of evidence, etc., which, in the view we take of the case, we deem unimportant. The main facts on which the cause is decided are established by legal evidence. The will, the lease, McQuilken's possession, the partition, the sales of the remainder after the execution of the lease, are chiefly shown by record and documentary evidence.

But there is one further question which it is proper we should consider. It is claimed that the lease of Mrs. Funk to McQuilken was executed under duress, whereby it was rendered void In this connection it will be well to have in mind a few dates:

The lease was executed September 30th, 1870.   William Funk, the husband of Jane E. Funk, departed this life in August, 1871.   From that time Mrs. Funk, not being longer under disability, could have proceeded to have the lease cancelled, if she had thought proper to do so. On the 14th of September, 1871, the partition of the land, hereinbefore stated, was made,   On the 8th of September, 1873, Mrs. Funk, by deed of quitclaim, relinquished all right in the real estate in question to James Schee, the appellant.   On the 16th of December, 1874, on the trial of this cause, we first hear of duress as invalidating said lease.   We now proceed to give all the testimony in the record touching the matter of the duress. It follows:

McQuilken testified:   "I was present at George Duy's office when the lease was executed.   Duy drew up the lease.   I talked with Mrs. Jane E. Funk there in Duy's office at the time."

Sparks, administrator, testified:   "I had a talk with Mrs. Jane E. Funk concerning McQuilken's lease, before the execution thereof.   It was a day or so before the lease was made.   I went to her and explained to her the whole matter, and informed her that we were about to execute a lease on six acres of the land to McQuilken, and that her husband and McQuilken had agreed upon the contract, and had agreed to execute the lease, and I told Mrs. Funk that it would be better for her to make the lease than to have any of the land sold; that I had found a good many debts against the estate; and she agreed to making the lease, and agreed to what I had said.   I was present and saw Mrs. Funk sign the lease. I thought she signed it willingly; she also signed her husband's name."

Mrs. Funk testified:

"The first I knew of the lease, or that any lease was to be made, was about fifteen minutes before we went to the office of Scott & Duy, where it was signed.   I did not

want to sign it, but my husband made threats, and it was read over to me, and I signed it, and also signed my husband's name for him. I think Mr. Duy, Harry D. Scott, my husband, McQuilken and myself were present when the lease was signed."

The plaintiff then offered to prove by said witness, Mrs. Funk, "that her husband said he would kill her and her two children, if she did not sign it, the lease," but the court refused the offer.

Samuel Conner testified:

"When the matter of making this lease came up, I talked it over with Mrs. Funk and her husband; they were anxious to get more from McQuilken for the lease if it could be got; if not, they thought it the best that could be done, to make the lease. Mrs. Funk did most of the talking during the interview."

George C. Duy testified: "I have no remembrance of any thing peculiar or strange occurring at the time of signing the lease. Did not see or hear of any force being used, nor do I remember of any reluctance or unwillingness on her part. The lease was drawn up, and she was sent for and came to my office and signed the lease. Mrs. Funk wrote her husband's name, and I attested it. This is about all I remember of taking place at the time."

It will be noticed, that the offer of the plaintiff to prove by Mrs. Funk, that her husband had threatened to kill her and her children, did not specify any time when the threat was made. Evidently it was not at the time of the execution of the lease.

In 1 Parsons Contracts, p. 395, it is said: "A contract made under duress is not, however, strictly speaking, void, but only voidable; because it may be ratified and affirmed by the party upon whom the duress was practised."

Again. It is a general rule of law, that "The privilege of avoiding a contract for reason of duress is personal, and none can take advantage of it but the party

himself." 1 Pars. Con. 395, note *g.* There may be some exceptions, but none embracing th`:`s case.

In *Fisher* v. *Shattuck,* 17 Pick. 252, it was decided, that the privilege should be extended to sureties; and in *Mc-Clintick* v. *Cummins,* 3 McLean, 158, it is said, that it should reach father and son, and husband and wife. But, on these exceptions, the cases are not uniform. See 1 Parsons, *supra,* note.

In this case, a ratification might be inferred, and, if it had not taken place, Schee could not avail himself of the duress to avoid the lease. The court did not err in refusing to hear the proof offered.

The judgment is affirmed, with costs.