# Rose v. Owen.

[No. 5,992.   Filed June 23, 1908.]

1. APPEAL.—*Briefs.*—*Waiver.*—Points not discussed are waived. p. 139.
2. CONTRACTS.—*Voidable.*—*Duress.*—Contracts obtained by duress are voidable at the option of the coerced party.   p. 141.
3. SAME.—*Duress.*—*Threats.*—Where threats actually coerce and are such as should reasonably be held to coerce the making of a contract, it is voidable for duress.   p. 141.
4. SAME. — *Voidable.* — *Ratification.*—*Duress.*—Contracts, voidable for duress, are considered as ratified, unless the coerced party elects to rescind within a reasonable time.   p. 142.

5. CONTRACTS.—*Duress.—Threats.—Destruction of Business.—Evidence.—Cancelation.*—Evidence that the plaintiff owned the controlling interest in a corporation whose stock he was placing on the market, that defendant, without any foundation for his claim, was threatening to sue for the appointment of a receiver for such corporation, that plaintiff, to prevent the destruction of his business, agreed to pay to defendant, at stated intervals, certain sums, shows that such contract was obtained by duress, and that it was subject to cancelation. p. 142.

From White Circuit Court; *John H. Gould,* Special Judge.

Cross-complaint by William D. Owen against Hiram E. Rose. From a decree for cross-complainant, defendant appeals. (Motion for an order for publication denied; see 37 Ind. App. 125.)    *Affirmed.*

*Reynolds, Sills & Reynolds, W. H. Latta* and *George A. Custer,* for appellant.

*McConnell, Jenkines, Jenkines & Stuart,* for appellee.

WATSON, J.—Appellant sued appellee for money alleged to be due by the terms of a certain contract entered into between them.    Appellee filed a so-called counterclaim against appellant, averring that the contract sued upon was obtained by threats, and asking that the instalments sued for be declared void and the contract canceled.    The appellant's complaint was then dismissed, and the case tried on the issues made on the counterclaim.    At the request of both parties the court made a special finding of facts, and stated conclusions of law thereon.    A decree was entered for the appellee, and said contract canceled.    The counterclaim was in three paragraphs.    Appellant's motions that each be made more specific were overruled.    The appellant then demurred separately to each paragraph, which demurrers were overruled.

The errors assigned are: (1) The overruling of the demurrers to each paragraph; (2) the overruling of the motions to make each paragraph more specific; (3) the overruling of the motion for a new trial.

Appellant has not discussed in his brief the alleged errors in overruling the motions to make more specific, therefore such assignments are deemed to be waived.

1. *Flickner* v. *Lambert* (1905), 36 Ind. App. 524; *Unger* v. *Mellinger* (1906), 37 Ind. App. 639; *Rudisell* v. *Jennings* (1906), 38 Ind. App. 403.

It is alleged, in substance, in the first paragraph of the counterclaim, that appellee owned 5,000 acres of land in Mexico; that he entered into a contract (made part of the complaint by exhibit) with appellant to sell said land on commission; that before any sales were made said contract was canceled; that thereafter, to wit, on April 9, 1898, Owen and others organized under the laws of Indiana a corporation known as the Mexican Coffee & Rubber Company, and said lands were sold to such corporation; that on June 7, 1899, another corporation was organized under the laws of Indiana by Owen and others, known as the Ubero Plantation Company, which latter corporation purchased 1,000 acres of land from said Mexican Coffee & Rubber Company; that Owen was president and a director of said plantation company, owned and controlled a majority of the stock, was financially interested therein to the amount of $100,000, had interested capitalists in said plantation company, and was placing the stock thereof on the market, which stock was finding ready sale, all of which appellant knew; that, for the purpose of compelling appellee to pay him money, appellant became the owner of one share of stock, and by his attorney prepared a petition asking the appointment of a receiver for the Ubero Plantation Company; that said petition was shown to Owen and a certain other stockholder, and the threat made that unless Owen paid, or provided for the payment of, $35,000 said proceeding would be instituted; that said threat was made to other stockholders, knowledge of which came to appellee before the contract sued upon was made; that appellee offered to go to trial at once on the question of any debt due

appellant, but the latter refused; that the institution of the receivership suit would have been as harmful to Owen and his associates as though it were founded on merit; that Rose knew that said plantation company had been recently organized, and that the mere filing of a suit for a receiver would embarrass the corporation and frighten stockholders from completing payment for their stock, and said acts were part of the scheme to extort money from appellee; that Rose and his attorney made like threats to persons who would carry the same to appellee, and further asserted that the moneys of said plantation company were not being used in the development of the property, but in paying large salaries, principally to appellee, which was false, as Rose knew; that no salaries have been paid to appellee or any other officer of said company, and that said statements were made wilfully, knowing them to be false; that Rose knew that he had no legal or equitable cause of action to procure the appointment of a receiver; that appellee, believing that appellant would execute his threats, and knowing that a receiver could be appointed without notice either to said company or to Owen, and knowing and believing that such an appointment would ruin said company and cause Owen to lose a large sum of money, executed said contract on account of said threats.

The second paragraph sets out the same facts as the first.

The third paragraph, by exhibit, sets out in full the first contract entered into by Rose and Owen, and alleges substantially these additional facts: that both parties contemplated that the land should be sold in small tracts, not in bulk; that, for the purpose of claiming the entire commission, Rose induced Owen to organize a corporation to which the land should be conveyed; that Rose promised not to claim that the commission had accrued under the contract, but promised that said contract would be canceled and a new contract made with such corporation; that appellant asserted that said contract had never been can-

celed, and claimed $35,000 as commission on the sale of said land to the Mexican Coffee & Rubber Company; that appellant had exhibited a forged letter purporting to have been executed by appellee, to the effect that said contract was still in force.

The prayer of each paragraph is that the instalment sued on be declared void.

Appellant's brief is far from being a model. The concise statement of the record consists of a statement thereof in its entirety. There is no discussion separate from the points and authorities, but only a conglomerate mass of statements of law, citations of authorities and fragmentary arguments.

It is conceded, as a fundamental proposition of law, that a contract obtained by duress is voidable. This is so for the reason that in such a case there is absent one of the essential requisites of a valid contract; *i. e.,* the free consent of each party thereto, or, in other words, a meeting of the minds.

2.

The question in this case is whether there can be duress by threats such as are alleged in the counterclaim. In *Bush* v. *Brown* (1875), 49 Ind. 573, 577, the court said: "To give validity to a contract, the law requires the free assent of the party who is to become chargeable thereon, and it therefore avoids any promise extorted from him by terror or violence, whether on the part of the person to whom the promise or obligation is made, or on that of his agent. Contracts made under such circumstances are said to be made under duress." In *Parmentier* v. *Pater* (1885), 13 Ore. 121, 126, 9 Pac. 59, it is said: "Any course calculated to excite alarm, which is resorted to by one party in order to coerce another to do an act detrimental to his rights, and advantageous to the former, is unlawful; and I do not think the law should make any distinction between means that are adopted in order to secure such ends." Where the threats actually

3.

coerce and may reasonably be held to coerce the will of the party threatened, and the contract results from such coercion, there is duress. *Baldwin* v. *Hutchison* (1893), 8 Ind. App. 454; *Adams* v. *Stringer* (1881), 78 Ind. 175; *Hines* v. *Board, etc.* (1884), 93 Ind. 266; *Cribbs* v. *Sowle* (1891), 87 Mich. 340, 347, 49 N. W. 587, 24 Am. St. 166. The injury feared would result if the receivership suit was instituted regardless of the merits of the case. Whatever defenses appellee or said company might have would be unavailable to avert the threatened injury, since it must result before such defense could be interposed.

A contract made under duress is voidable at the election of the party coerced, provided the contract is not ratified and the election is made within a reasonable time.

4. *Bush* v. *Brown, supra; Schee* v. *McQuilken* (1877), 59 Ind. 269, 275; *Walker* v. *Larkin* (1891), 127 Ind. 100. The allegations of either paragraph are sufficient to support this suit, and the trial court did not err in overruling the demurrers.

Appellant further urges that the evidence does not sustain the decision of the court, that said decision is contrary to law, and that the court erred in its conclusions of

5. law from the facts found. The court found, as matters of fact, that Owen originally owned said land; that Rose contracted to sell the same in small tracts on commission; that the written form of said contract was never completed; that the parties did not intend that the land should be sold in bulk; that Rose induced Owen to incorporate and convey said land to such corporation, and the contract for sales on commission was annulled; that Rose afterwards sold land for said corporation, and was paid ten per cent commission thereon, but said former contract was never adopted or ratified by said corporation; that the Ubero Plantation Company was duly organized under the laws of the State of Indiana, and 1,000 acres of land sold thereto by the Mexican Coffee & Rubber Com-

pany; that Rose added certain words to a letter which made it purport to be a ratification by the Mexican Coffee & Rubber Company of said former contract of sales on commission; that said words were added without the knowledge or consent of Owen or said company; that Rose was discharged from the services of both companies because he was organizing a corporation similar to the Ubero Plantation Company, and said Ubero Plantation Company was not indebted to him; that appellant submitted a bill for the commission on the sale of said land by Owen to the Mexican Coffee & Rubber Company.

The thirteenth finding of fact is in terms as follows: "It is found that Rose, some time in November, 1899, procured his son Emmett Rose to subscribe for a share of $100 of the stock of the Ubero Plantation Company upon monthly payments of $2.50 for forty months, and on June 15, 1900, nine days after Rose had begun his suit in the Superior Court of Marion County said Rose caused his son to assign his said stock to him, he paying nothing therefor, and there having been only $17.15 paid on the stock at that time. The purchase and assignment of this stock were not made as an investment, but for the purpose of making Rose a stockholder, in order that he might the better force the collection of his claim against Owen and the Mexican Coffee & Rubber Company. For several weeks prior to May 7, 1901, and up to that date, said Rose, by himself and his attorney before referred to, the latter acting for Rose and by his authority, made and caused to be made and conveyed to Owen threats that, unless Owen should forthwith pay to Rose a large sum of money, namely, $35,000, as a settlement of Rose's alleged claim, Rose, through his attorney, would file a complaint and bring suit for the appointment of a receiver for the Ubero Plantation Company; that said attorney, acting for Rose, and by his direction, made these threats to * * * directors of said company, and to * * * its attorney, and to * * * attorney for Owen,

and exhibited to them a complaint already prepared, wherein Rose was named as plaintiff and said Ubero Plantation Company, Owen, * * * and others were named as defendants, in which complaint grave charges of crimes and criminal misconduct were made against said party, and praying for a receiver for said company, and, presumably by direction of Rose, said attorney stated to these persons that the charges in the complaint were so grave that Owen would not like to see it filed in court, and then and there threatened that unless Owen should forthwith pay his alleged demand for $35,000 the complaint would be filed in the Superior Court of Marion County; that these threats were made for the purpose of being communicated to Owen, and they were in fact at once communicated to him by these parties; that said threats were also made to Owen personally, and caused Owen to become greatly frightened and deprived of his will-power; that these threats were made for the purpose of intimidating and coercing Owen into paying, or providing for the payment of, or signing a contract to pay, said sum of $35,000 to Rose, against the will of said Owen, and thereby said Owen was intimidated and overcome by these threats, and in fear that said complaint for a receiver would be filed and suit be begun, and believing and fearing that he would thereby be degraded and disgraced, and that said Ubero Plantation Company and its property and business would be greatly injured and damaged thereby, and protesting and asserting that such claims of Rose were unconscionable and groundless demands, and that he was not indebted to Rose in any amount, to prevent said threatened suit and impending disgrace to himself and his associates, and to protect said property and interest which he controlled, and to prevent financial ruin and disaster which he believed would follow the filing of said complaint, on May 7, 1901, Owen signed the contract sued on by the plaintiff herein." Said contract provided for the payment to Rose by Owen of $35,000

in monthly instalments, beginning September 1, 1901, the first five payments to be $500 each, and then $1,000 on the first of each month until said sum should be paid. The court further found that there was no reason for the appointment of a receiver, and that the averments in said petition were false. Such an action would have injured Owen, and it seemed to him and he was so advised that the only way to avoid it was to execute the contract in question. Rose performed his part of the contract, but Owen did not intend to perform his part, and the payment of the $12,500 was not a ratification, but only to prevent the bringing of an action for a receiver until it was safe to repudiate said contract. All the parties knew the facts herein stated. There was no misrepresentation or concealment by Owen. Appellant did not have reasonable grounds for instituting the receivership suit, and said contemplated suit was not in good faith, but was a plan to extort money from appellee. Damage would have resulted both to Owen and the Mexican Coffee & Rubber Company before any remedy could have been interposed.

The facts found fully sustain the judgment, and there being no reversible error, the judgment is affirmed.