**NATIONAL LABOR RELATIONS BOARD v. UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 622 (UE).**

No. 10929.

United States Court of Appeals, Third Circuit.

Argued March 17, 1953.

Decided April 22, 1953.

**674**

Dominick L. Manoli, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel,

Dean E. Denlinger, Washington, D. C., on the brief), for petitioner.

David Scribner, Basil R. Pollitt, New York City, and David Cohen, Philadelphia, Pa., for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board entered against the respondent Union. The Board found that the Union and Stupakoff Ceramic & Manufacturing Company had entered into a collective bargaining agreement containing an unlawful union-security clause and that pursuant to such clause the Union had caused the Company to discharge an employee, George Gozdick, in violation of Sections 8(b) (2) and 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (1) (A), (2). The order directed the Union to desist from maintaining or giving effect to the unlawful union-security provisions of the agreement, to notify the Company that it has no objection to the reinstatement of Gozdick to his former or substantially equivalent position without prejudice to the seniority or other rights he would have enjoyed had he not been discharged on August 11, 1950 and to make him whole for his loss of pay. 98 NLRB 664. The Union opposes enforcement of the order and seeks to have it set aside upon the ground that the union-security clause in question was not unlawful and that Gozdick was not unlawfully discharged.

It appears that all collective bargaining agreements between the Union and the Company since 1943 have contained the following union-security clause:

"All employees shall become members of the Union within 30 days of their employment. Only members in good standing with the Union shall be employed by the Company after the 30 day period has been completed. Any member of the Union who is notified by the Union that he is not in good stand-

ing and does not place himself in good standing within one week from date of such notice shall, within two weeks from the time of such notice to the Company, be considered to have quit the employ of the Company."

Prior to August 22, 1947 this clause was authorized by Section 8(3) [1] of the Act since the Union was the collective bargaining representative of the employees of the Company. On that date, however, the Labor Management Relations Act of 1947[2] went into effect amending the proviso of Section 8(3) [now styled Section 8(a) (3)] to read as follows:

"*Provided,* That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective-bargaining unit covered by such agreement when made; and (ii) if, following the most recent election held as provided in section 9(e) the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement:" 61 Stat. 140–141.

It will thus be seen that the amendment outlawed union-security agreements which were not authorized by the employees at a Board conducted election. But under Section 102 of the Labor Management Relations Act, 29 U.S.C.A. § 158 note, the amendment did not apply to collective bargaining agreements entered into prior to its passage which had not more than one year to run. It would appear that such an agreement was in effect between the Union and the Company at the time of the passage of the Act. In any event the Union and the Company inserted in their subsequent agreements, the last of which was executed on May 1, 1950, an additional paragraph immediately following the union-security clause which read as follows:

"The above paragraph shall become inoperative on July 1, 1948, but shall again become operative if and when made legally permissible."

On July 3, 1950, the Board, after an election, certified that the Company's employees had authorized the Union to execute a union-security agreement as permitted by Section 8(a) (3) of the amended Act. The Union and the Company on July 27, 1950 entered into a supplemental agreement setting out the original union-security clause without the additional paragraph just quoted.

 Gozdick had been employed by the Company in 1940. He was a member of the Union until February 1950 when he was expelled from membership. He continued in the employment of the Company, however. On July 27, 1950 the Union mailed him a copy of the supplemental agree-

---

1. "Sec. 8. It shall be an unfair labor practice for an employer—

\* \* \* \* \*

"(3) By discriminat'on in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this Act, or in the National Industrial Recovery Act (U.S.C., Supp. VII, title 15, secs. 701–712), as amended from time to time, or in any code or agreement approved or prescribed thereunder, or in any other statute of the United States, shall preclude any employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this Act as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9(a), in the appropriate collective bargaining unit covered by such agreement when made." 49 Stat. 452.

2. 61 Stat. 140.

ment and gave him one week to place himself in good standing with the Union. Gozdick refused to rejoin the Union and on August 11, 1950 he was discharged by the Company at the Union's request. Under the express terms of the additional paragraph above quoted the union-security clause of the collective bargaining agreement automatically became operative on July 3, 1950 since by virtue of the election and the Board's certification that clause then became "legally permissible". The supplemental agreement of July 27, 1950 merely served to give formal recognition to the existing legal situation. It follows that Gozdick was in fact given more than 30 days after the effective date of the agreement in which to join the union. Accordingly his discharge did not violate the law unless, as the Board asserts, the union-security clause itself violated the Act and was therefore wholly invalid.

Admittedly the union-security clause here in question gave new employees 30 days following the beginning of their employment, as the Act requires, in which to join the Union. But, says the Board, the clause failed expressly to give employees 30 days following July 3, 1950, the date of the revived effectiveness of the union-security provision, in which to join, so that if an employee had been hired shortly before July 3rd he would not have the minimum time accorded him by the Act in which to do so.

We cannot accede to the Board's contention. In our view the statutory requirement for the minimum joining period of 30 days following the effective date of a union-security agreement is but a temporary transitional provision which, although it must, of course, be read into every such agreement, need not necessarily be expressly included on pain of invalidating the entire union-security provision. Collective bargaining agreements are not to be so strictly and technically construed. National Labor Relations Board v. Rockaway News Supply Co., 1953, 345 U.S. 71, 73 S.Ct. 519. They are practical working arrangements frequently drawn by laymen unschooled in the niceties of legal draftsmanship. Where, as here, such a contract

exhibits substantial compliance with the statute we cannot hold the union-security clause to be void. We conclude that the Board erred in doing so and thereupon in holding that Gozdick's discharge was unlawful.

The petition of the Board for the enforcement of its order will be denied and the order will be set aside.