264 F.2d 134
 FENTRESS COAL & COKE COMPANY, Inc., Appellant,
v.
John L. LEWIS, Charles A. Owen and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Appellees.
 No. 13612.
 United States Court of Appeals Sixth Circuit.
 March 9, 1959.
 
 Maclin P. Davis, Jr., and D. L. Lansden, of Waller, Davis & Lansden, Nashville, Tenn., for appellant.
 R. R. Kramer, Knoxville, Tenn. (Val J. Mitch, Harold H. Bacon, Charles L. Widman, Washington, D. C., E. H. Rayson, Knoxville, Tenn., on the brief; Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., of counsel) for appellees.
 Before ALLEN, Circuit Judge, and MATHES and Chief Judge SHELBOURNE, District Judges.
 PER CURIAM.
 
 
 1
 This is an action brought by the trustees of a welfare fund created under a national collective bargaining agreement executed in 1950 between numerous coal operators and associations throughout the United States and the United Mine Workers of America, pursuant to Section 302(c) (5) of the Labor Management Relations Act of 1947, 29 U.S.C., Section 186(c) (5), 29 U.S.C.A. § 186 (c) (5). The action was instituted in the United States District Court for the Middle District of Tennessee against an individual employer operating in Tennessee. It sought to recover money due the trust on a note representing royalty payments and additional royalties which the operator had agreed to pay into the welfare and retirement fund.
 
 
 2
 The contract establishing the welfare and retirement fund provides that the fund "is an irrevocable trust created pursuant to Section 302(c) of the `Labor-Management Relations Act, 1947,' and shall endure as long as the purposes for its creation shall exist." The stated purposes include the payment of medical and hospital benefits to "employees of said Operators, their families and dependents * * * pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or life insurance, disability and sickness insurance or accident insurance * * *." Benefits to be established as agreed upon from time to time by the trustees include "the making of any or all of the foregoing benefits applicable to the individual members of the United Mine Workers of America and their families and dependents, and to employees of the Operators other than those exempted from this Agreement * * *." Other benefits not necessary to list in detail are included. The operators who signed the agreement were required to pay into the trust a stipulated amount per ton of coal produced for use or sale, the amount required since 1952 being 40¢ per ton.
 
 
 3
 As a condition of employment the agreement required that all employees covered should be or become members of the union "to the extent and in the manner permitted by law" and also declared that the agreement "is an integrated instrument and its respective provisions are interdependent." A provision for checkoff of dues of such employees as had executed a written assignment therefor within the provisions of the Labor Management Relations Act of 1947 was included. 29 U.S.C., Section 141 et seq., 29 U.S.C.A. 141 et seq.
 
 
 4
 Under Tennessee law, T. C. Sections 50-208 through 50-212, closed shops and denial of employment because of an employee's refusal to join a labor union or failure to pay union dues are prohibited. The employer admits that it is in default of payment of the amount sued for, but asserts that it was required in effect by the union to employ in Tennessee only persons who were or became members of the union and to check off membership dues from the wages of all its employees. It therefore contends that the entire agreement is illegal, void, and unenforceable as to a coal mining operation performed in Tennessee under Tennessee law.
 
 
 5
 Appellant admits that October 30, 1954, it delivered to appellees its promissory note in the sum of $36,423.81 and that this note was executed by appellant "by reason of a debt owed by the defendant to the plaintiffs for unpaid royalties which had accrued under the Agreement of 1950 as amended in 1951 and 1952 for coal produced during the years 1952 and 1954." It concedes that a balance of $27,317.85 was due as of July 25, 1955, on this note. It also concedes that upon the latter date it delivered to appellees its promissory note in the sum of $61,467.43, which represented the balance due of $27,317.85, together with unpaid royalties in the amount of $34,149.58, which had accrued under the agreement for coal produced during 1951 and from January through May of 1955. It paid $12,067.43 of this amount, leaving $49,400 still due.
 
 
 6
 Although appellant admits its nonperformance of the royalty agreement, it alleges in its answer that it is not indebted to appellees in any amount because of the illegality of the welfare fund agreement under the provisions of the Tennessee Code above quoted. The court held that the contract was not ambiguous, that the clear purpose of Section 14(b) of the Labor Management Relations Act, 29 U.S.C., Section 164(b), 29 U.S.C.A. § 164(b), was to recognize and give effect to state laws such as the Tennessee statutes involved here prohibiting similar union security clauses. Also the court held that the checkoff provision of the agreement provides for a checkoff of dues only with respect to employees from whom written assignments had been obtained as permitted by Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C., Section 302(a) and (c) (4), 29 U.S.C.A. § 186(a), (c) (4). This holding is correct and must be affirmed. Cf. National Labor Relations Board v. Rockaway News Supply Company, Inc., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832.
 
 
 7
 The case of Lewis v. Jackson & Squire, D.C., 86 F.Supp. 354, appeal dismissed, 8 Cir., 181 F.2d 1011, was adjudicated prior to the amendment in 1950 of the Coal Wage Agreement of 1947, which amendment added to the unqualified closed shop agreement contained in the contract of 1947 the language "to the extent and in the manner permitted by law." The District Court rightly held that the Lewis case, supra, has no bearing here.
 
 
 8
 The District Court made extensive findings of fact and conclusions of law which are in accordance with the applicable statutes. It would serve no purpose to repeat the thorough and careful discussion of the issues by the District Court. Every question raised has been carefully considered in this court.
 
 
 9
 The judgment is affirmed upon the grounds and for the reasons stated in the opinion of the District Court.