John L. LEWIS, Henry G. Schmidt and Josephine Roche, As Trustees of The United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs,

v.

Harry KERNS, Nellie Kerns, Darrell Kerns and Doris Kerns, individually, and trading as the Tri-K Mining Company, a partnership, Defendants.

Civ. A. No. TH 58-C-13.

United States District Court
S. D. Indiana,
Terre Haute Division.
June 23, 1959.

Val J. Mitch and Harold H. Bacon, Washington, D. C., and Louis D. Natt-kemper, Terre Haute, Ind., for plaintiffs.

Gambill, Cox, Zwerner & Gambill, Terre Haute, Ind., for defendants.

STECKLER, Chief Judge.

This cause is before the Court on plaintiffs' amended motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., directed to both plaintiffs' second amended complaint and defendants' amended counterclaim. A jury trial was demanded by defendants.

Plaintiffs, John L. Lewis, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter referred to as the Fund), an irrevocable trust created under the terms of the National Bituminous Coal Wage Agreement of 1950, pursuant to Section 302(c) (5), Labor-Management Relations Act, 1947, 29 U.S.C.A. § 186(c) (5), filed a complaint against the defendants, Harry Kerns, Nellie Kerns, Darrell Kerns and Doris Kerns, individually and trading as the Tri-K Mining Company, a partnership, alleging that the defendants executed the National Bituminous Coal Wage Agreement of 1950 as amended effective October 1, 1952, September 1, 1955, and October 1, 1956, under the terms of which agreements they were required to pay to the Fund a royalty of forty cents (40¢) per ton for all coal produced for use or for sale. By stipulation of the parties it was agreed defendant, Doris Kerns, ceased to be a partner as of June 30, 1956. Therefore, by a second amendment to the complaint originally filed, plaintiffs urged the defendants, Harry Kerns, Nellie Kerns, Darrell Kerns and Doris Kerns during the period January 1, 1955, through June 30, 1956, produced 368,189 tons of coal for use or for sale, resulting in an obligation due and owing the plaintiffs of $147,275.60, of which amount defendants paid $63,856, leaving a balance owing by these four defendants for this period of $83,419.60, and during the period July 1, 1956, through December 31, 1957, the remaining defendants, Harry Kerns, Nellie Kerns and Darrell Kerns produced 218,480 tons of coal for use or for sale, resulting in an obligation due and owing the plaintiffs of $87,392, of which the defendants paid $37,550.40, leaving a balance owing by these three defendants for this period of $49,841.60. The defendants by stipulating the amount of production and the total royalty payments made during each period have agreed that if plaintiffs are entitled to judgment in full, the amount of the judgment is correctly set forth in the Second Amended Complaint as stated above.

Defendants filed an amended counterclaim urging recovery from the plaintiffs of $143,474.40, representing payments of royalty obligations paid to plaintiffs for coal produced for use or for sale during the period December 15, 1953, through and including December 31, 1957.

The basis of the defenses raised by defendants' answer and the grounds for recovery of defendants' counterclaim are the same.

■ Defendants initially urge summary judgment should be denied for the reason that there are material issues of fact in dispute and that more than one inference may be drawn from the admitted facts, either circumstance requiring jury determination. However, defendants have failed to point out any material fact in dispute or varying inference to be drawn from admitted facts

in support of their contention. Plaintiffs, for the purposes of their motion, have admitted in every respect all facts set forth in the pleadings, stipulated facts, defendants' answers to interrogatories and affidavits filed by both parties with exhibits attached. The Court has examined all of the facts and issues raised and has searched in vain to find any material facts or varying inferences from the admitted facts which the Court determines must be resolved by a jury.

The Court recognizes that there are many ramifications in the contracts here involved, which require a careful analysis, but after such analysis, it appears that the contracts are carefully drawn and clearly reflect the intention of the parties without ambiguity or varying inference.

 The principal question of fact which defendants allege to be in dispute is defendants' claim that approximately 25% of the production of defendants' mine, referred to as "bugdust" or "carbon", was not "coal produced for use or sale" upon which a royalty was due under the terms of the contracts. However, defendants have stipulated this "bugdust" or "carbon" was sold to purchasers "to be used for fuel". Since this production was sold to be used as fuel, the contention of the defendants that it was not coal within the meaning of the contract is so nebulous and of such dubious merit that the Court cannot give it sufficient weight to permit its submission as a question of fact to a jury. This is particularly true upon examining the terms of the contracts drawn by bituminous coal operators and union officials experienced in the bituminous coal industry, who were cognizant of the fact bituminous coal is produced from various sources and by different methods, resulting in production of different grades of coal, some grades being of lesser value than others. Therefore, the language "produced for use or sale" shows the clear intent of the parties to require payment of royalty to the Fund on all production sold as coal regardless of grade. The criterion which must be recognized is that if the product was sold for use as coal, a royalty obligation was created. "In construing a contract, the duty of the court is to determine what a contract is and not to make a new one for the parties. It is only when there is ambiguity or lack of clarity in the terms of the contract that we look beyond it to ascertain its meaning". Filtrol Corp. v. Loose, 10 Cir., 209 F.2d 10, 12, citing William J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290.

 The defendants further contend that the contracts are invalid in that they were executed by reason of duress, namely the "concerted activity and threats of the United Mine Workers of America and in order to avoid strikes, work stoppages, etc." Duress is actual or threatened violence contrary to law by reason of which a person is compelled to enter into or discharge a contract. United States Rubber Co. v. Moon, 93 Ind. App. 571, 179 N.E. 26. However, threat of lawful strike does not constitute duress or vitiate a collective bargaining agreement. American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 42 S.Ct. 72, 66 L.Ed. 189; Shipley v. Pittsburgh & L. E. R. Co., D.C.W. D.Pa., 83 F.Supp. 722; Roth v. Local Union No. 1460 of Retail Clerks Union, 216 Ind. 363, 24 N.E.2d 280.

 Assuming, however, that the duress alleged here by the defendants was unlawful, the contracts are not void but only voidable and may be ratified and affirmed by the party upon whom the alleged duress was practiced. Schee v. McQuilken, 59 Ind. 269; United States Rubber Co. v. Moon, supra; Lewis v. Cable, D.C.W.D.Pa., 107 F.Supp. 196. In addition, to render a contract voidable by reason of duress an election to rescind and challenge the validity must be made within a reasonable time. Rose v. Owen, 42 Ind.App. 137, 85 N.E. 129. Defendants here admit that during the period January 1, 1955, through December, 1957, they operated under the terms of the contracts in question producing a substantial number of tons of coal, paying to plaintiffs a substantial portion of

the royalty due, checking off union dues of their employees and paying such dues to the proper offices of the United Mine Workers of America pursuant to the terms of the contracts. At no time during the three year period involved in this action did the defendants by an affirmative act attempt to rescind the contracts and the question of the validity of the contracts by reason of duress is raised here for the first time. It must be held, therefore, the defendants having ratified the contracts by their actions and failing to rescind over a period of three years are now estopped to deny the validity of the contracts. Harrison v. Glucose Sugar Refining Co., 7 Cir., 116 F. 304, 58 L.R.A. 915; Lewis v. Cable, supra.

As a further defense, defendants urge that the contracts are violative of the statutes and the public policy of the State of Indiana in that the contracts require a union shop. The language of the contracts to which defendants refer is as follows:

> It is further agreed that as a condition of employment all employees shall be, or become, members of the United Mine Workers of America, to the extent and in the manner permitted by law * * *.

Defendants rely upon the Indiana statute commonly known as the "Anti-Injunction Act", Burns' Indiana Statutes, Ann., Vol. VIII, Part 1, 1952 Replacement, Sec. 40–501 et seq., and the Indiana "Right to Work Law", Burns' Indiana Statutes, Ann., Vol. VIII, Part 1, 1952 Replacement, Sec. 40–2701 et seq., p. 98, Pocket Supplement, 1957. The Court finds that neither of these statutes are applicable or controlling.

The "Anti-Injunction Act" does not prohibit union security nor invalidate a collective bargaining agreement providing for union security by way of a union shop, Smith v. General Motors Corporation, Ind.App., 143 N.E.2d 441. This Act merely describes and limits the authority of the courts of the State of Indiana to grant injunctions in disputes arising out of labor-management rela-tions, Roth v. Local Union No. 1460 of Retail Clerks Union, supra.

The "Right to Work Law" is equally inapplicable in that it applies to only those collective bargaining agreements entered into or extended after June 26, 1957, the effective date of the Act. Each of the contracts here involved were entered into prior to the effective date of the Act and the Court finds no evidence indicating the contracts were extended after the effective date of the Act.

In any event the savings clause contained in the union security provision of the contracts limiting union security to "the extent and in the manner permitted by law", clearly provides that the union security provision is without force and effect in those jurisdictions where union security is prohibited by law. This precise question involving the same collective bargaining agreement was reviewed in Fentress Coal & Coke Co. v. Lewis, 6 Cir., 264 F.2d 134, the court affirming per curiam the decision of the District Court, D.C.M.D.Tenn., 160 F.Supp. 221. This Court specifically agrees with the Fentress decision and further opines if the concise savings clause had been further drawn out or detailed it would have lost its clear meaning and ambiguity may have crept in. Defendants' contentions, therefore, must be rejected as a matter of law.

In opposition to plaintiffs' amended motion for summary judgment defendants filed certain affidavits in an effort to show that in practice the union required defendants' employees to be or become members of the union before such employees were permitted to work in the mines. It is defendants' contention that this action by the union violates Section 8(a) (3) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 158(a) (3), and invalidates the contracts since employees were not allowed a thirty day period following the beginning of their employment to become members of the union as required by the Act. Further, defendants contend the failure of the

union security clause to provide for such a thirty day waiting period invalidates the contracts. Plaintiffs, admitting for the purposes of their motion all of the allegations of these affidavits, insist that at most it indicates the parties violated the terms of the collective bargaining agreements and that these actions constitute only a possible unfair labor practice charge and do not invalidate the contracts. It is the opinion of this Court that plaintiffs' position is correct notwithstanding the fact that there may have been actions which presented grounds for complaint by one or the other of the parties to the contracts. Lewis v. Fentress Coal & Coke Co., Inc., supra, and N. L. R. B. v. F. H. McGraw & Co., 6 Cir., 206 F.2d 635. Neither does the failure of the contracts to specifically spell out the waiting period of thirty days before an employee is required to join the union provided by Sec. 8(a) (3) invalidate the contracts. This statutory requirement, though not expressly stated, is impliedly a part of every collective bargaining agreement. N. L. R. B. v. United Electrical, Radio and Machine Workers, 3 Cir., 203 F.2d 673.

■ The defendants have raised numerous other legal defenses with which the Court cannot agree. It is contended that the plaintiffs are not the proper parties to bring this action and that the United Mine Workers of America and the defendants' employees are indispensable parties. This contention has been denied in Lewis v. Quality Coal Corporation, 7 Cir., 243 F.2d 769, certiorari denied 355 U.S. 882, 78 S.Ct. 149, 2 L.Ed.2d 113, and more recently in United States v. Embassy Restaurant, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601. Similarly the contention that the United Mine Workers of America has failed to comply with Section 9(f), (g) and (h), of the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 159(f), (g) and (h), invalidates the contracts was denied by the Supreme Court of the United States in United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941, and N. L. R. B. v. District 50, United Mine Workers, 355 U.S. 453, 78 S.Ct. 386, 2 L.Ed.2d 401. Defendants also urge that the failure of the United Mine Workers of America by formal action to deem or declare defendants' failure to pay royalties to the plaintiffs as a condition precedent to the determination of defendants' liability under the terms of the contracts must also be disregarded. The language of the contracts provides the union at its "option" may declare failure to pay royalties a violation of a contract. The provision for exercise of an option by the union to declare the contract violated must be construed as a permissive act and not a requirement creating a condition precedent to plaintiffs' recovery of royalties.

For the above reasons the Court concludes plaintiffs' amended motion for summary judgment as to their second amended complaint and defendants' amended counterclaim should be sustained.