John L. LEWIS et al., Plaintiffs,

v.

**FENTRESS COAL AND COKE COMPANY, Inc., Defendant.**

Civ. A. No. 2238.

United States District Court
M. D. Tennessee,
Nashville Division.

March 6, 1958.

R. R. Kramer and E. H. Rayson, Knoxville, Tenn., Val J. Mitch and Harold H. Bacon, Washington, D. C., for plaintiffs.

Dick L. Lansden and Maclin Davis, Jr., Waller, Davis & Lansden, of Nashville, Tenn., for defendant.

WILLIAM E. MILLER, District Judge.

This action was instituted by the plaintiffs, John L. Lewis, Charles A. Owen, and Josephine Roche, as trustees of the United Mine Workers of America Welfare and Retirement Fund, against the defendant, Fentress Coal and Coke Company, to recover royalty payments alleged to be due the trustees under the terms of

the National Bituminous Coal Wage Agreement of 1950, as amended, hereinafter referred to, unless otherwise indicated, as the "Agreement".

Jurisdiction is properly based upon diversity of citizenship and the requisite jurisdictional amount. The Agreement is the collective bargaining agreement between the United Mine Workers of America and certain coal operators and the Southern Appalachian Coal Operators Association, of which the defendant was a member. By its terms, contributions to the Welfare and Retirement Fund, of which plaintiffs were named trustees, were to be made by each employer at the rate of 30 cents per ton of coal produced. By an amendment in 1952 the royalty was increased to 40 cents per ton.

On or about July 25, 1955, the defendant executed and delivered to the plaintiffs a promissory note in the sum of $61,467.43, payable in monthly installments, providing for acceleration of principal upon default in payment of any installment, such note representing an indebtedness owing by the defendant arising from unpaid royalties. The balance due on the note at the time the complaint was filed was the sum of $49,400, for which the plaintiffs sue. They also sue for an additional amount, not yet determined, representing royalties at the rate of 40 cents per ton for coal produced after June 30, 1956.

Both the plaintiffs and the defendant have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A., based upon the pleadings, affidavits, interrogatories, and requests for admissions, and the answers or responses thereto. Plaintiffs insist that they are entitled, as a matter of law, to recover under the Agreement because the defendant's defenses are without merit and are in law insufficient to defeat a recovery. The defendant argues that its defenses are sufficient, as matter of law, to defeat a recovery, that there is no genuine issue of fact, and that its motion for summary judgment should be sustained and the plaintiffs' action dismissed.

In defense to the action the defendant's insistence is that the collective bargaining agreement between the Union and the defendant, as amended, provides for a union shop, in contravention of the public policy of Tennessee, as set forth in 9 T.C.A. Secs. 50–209—210, and the agreement in Tennessee is therefore illegal, void and unenforceable. In support of this insistence it is said that the provision authorizing a union shop is an integral part of the Agreement itself, having the effect of vitiating the entire Agreement, including the provisions thereof providing for royalty payments to the plaintiffs as trustees of the Welfare and Retirement Fund. The applicable provisions of the Tennessee Code relied upon by the defendant are as follows:

"*Contracting for exclusion from employment because of affiliation or nonaffiliation with labor union unlawful.* — It shall be unlawful for any person, firm, corporation or association of any kind to enter into any contract, combination or agreement, written or oral, providing for exclusion from employment of any person because of membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization of any kind." 9 T.C.A. Sec. 50–209.

"*Exclusion from employment for payment of or failure to pay union dues unlawful.* — It shall be unlawful for any person, firm, corporation or association of any kind to exclude from employment any person by reason of such person's payment of or failure to pay dues, fees, assessments, or other charges to any labor union or employee organization of any kind." 9 T.C.A. Sec. 50–210.

The collective bargaining agreement provides that:

" * * * as a condition of employment all employees shall be or

become, members of the United Mine Workers of America, to the extent and in the manner permitted by law. \* \* \*"

The Agreement, as shown on its face, was executed in the District of Columbia, and, based upon its terms and the parties involved, it is a fair inference that it was intended to be performed in the various states in which the coal operators were located, some of such states having and others not having right-to-work statutes similar to that of Tennessee. The defendant, notwithstanding this fact, insists that the Agreement, having been executed in the District of Columbia, is to be considered as a District of Columbia agreement and must be construed by the law of the District of Columbia; that the words "permitted by law", as used in the Agreement, mean as permitted by the law of the District of Columbia; that the applicable law of the District of Columbia is the Labor Management Relations Act of 1947, 29 U.S.C.A. §§ 141–144, 171–197, and the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; that the law of the District of Columbia, as expressed in 29 U.S.C.A. § 158(a) (3) permits a union shop whereby membership in a Union "on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later", may be required; that a union shop of the type permitted by the District of Columbia is violative of the law of Tennessee and contrary to its public policy; and, therefore, that the plaintiffs' action for the recovery of royalties due and owing the trustees based upon coal produced in performance of the collective bargaining agreement must fail.

▮▮ Since jurisdiction is invoked upon the ground of diversity of citizenship, this Court is required to follow the conflicts of law rule in the state in which it sits. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. The conflicts rule in Tennessee is that "rights and obligations under a contract are governed by the law of that state with the view to which it is made and that the intentions of the parties in this respect to be gathered from the terms of the instrument and all of the attending circumstances control." First American National Bank of Nashville v. Automobile Insurance Co., 6 Cir., 252 F.2d 62; Bowman v. Price, 143 Tenn. 366, 226 S.W. 210; Deaton v. Vise, 186 Tenn. 364, 372, 210 S.W.2d 665, 668, in which latter case the Supreme Court of Tennessee stated:

"\* \* \* a contract is presumed to be made with reference to the law of the place where it was entered into unless it appears that it was entered into in good faith with reference to the law of some other state."

It would appear, therefore, that the latest Tennessee cases, although recognizing certain prima facie presumptions, in the final analysis make the intention of the parties controlling for determining the law applicable to their contracts, such intention to be gathered from the contract itself and from the attending circumstances.

▮ In the instant case there can be no doubt that insofar as the defendant is concerned as one of the parties, the Agreement, executed in the District of Columbia, was to be performed with respect to substantially all of its important provisions in Tennessee. It is also clear that the clause in question providing for membership in the Union as a condition of employment relates directly to an aspect or feature of the Agreement which was to be performed entirely in the State of Tennessee. Considering the character and terms of the Agreement, the fact that the parties contemplated its performance in a number of different states, and the natural assumption that they intended to enter into a contract which would be legally enforceable at the place of performance, the Court is of the opinion that it was the intention of the parties that the requirement for union membership of employees should not be operative in states having right-to-work statutes. Consequently, in this case the

parties did not contract in violation of the laws of Tennessee or impose a condition contrary to its public policy.

But if the defendant's argument that the law of the District of Columbia controls the construction and meaning of the Agreement is accepted, it would appear that the same result would follow. For, although the Labor Management Relations Act, 29 U.S.C.A. § 158 (a) (3), permits a union shop under certain conditions, Section 14(b) of the National Labor Relations Act, 29 U.S.C.A. § 164(b), provides as follows:

"Nothing in this Act shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

The clear purpose of this provision of federal law applicable in the District of Columbia is to recognize and give effect to state laws prohibiting union security clauses of the type here involved. Such laws are allowed to operate whether they are the laws of the state in which a contract is "executed" or the laws of the state in which the contract is to be "applied". The section is just as much a part of the District of Columbia law as the provision permitting a union shop, and no reason appears or has been suggested why, if the parties did contract with reference to that law, it should be held that they meant to exclude Section 14(b). On the contrary, the Court is of the opinion that they must be presumed to have contracted with reference to all applicable portions of the law, rather than to some part of it which would have the effect of invalidating their agreement.

The case of Lewis v. Jackson & Squire, D.C., 86 F.Supp. 354, decided September 15, 1949, construed the National Bituminous Coal Wage Agreement of 1947 which did not contain the savings clause "to the extent and in the manner per-mitted by law". Consequently, the holding in that case that the agreement was void because it included a provision prohibited by the laws of Arkansas requiring membership in the Union as a condition of employment is not in point. In the Jackson & Squire case, the parties contracted, without qualification, in violation of the applicable laws of Arkansas. In the instant case, they have not contracted in violation of the laws of the State of Tennessee but have expressly recognized such law and given effect to it.

The effect of the savings clause would appear to be to eliminate from the contract altogether the union security provision in any state in which the Agreement was to be performed and having a statute outlawing such a provision. It would have practically the same effect as if the parties had provided in express terms that the provision for union membership as a condition of employment should not apply in any state where such provision was unlawful. Any other conclusion would do violence to the clearly expressed intention of the parties.

In the Agreement it is provided that "the United Mine Workers of America is recognized herein as the exclusive bargaining agency representing the employees of the party of the first part". In the amendments to the Agreement in 1951, 1952 and 1955, this language is not repeated and the Union is defined or referred to in each of the amendments in the following words: " * * * International Union, United Mine Workers of America * * * on behalf of each member thereof, as party of the second part * * * "

It is argued by the defendant from the omission of the recognition clause from the subsequent amendments and the use of the words "on behalf of each member" thereof, that the Union in executing the later amendments acted on behalf of its members only, in violation of its duty to represent all employees, whether or not they were union members. It is further argued that such language in the amendments at least

demonstrates that the parties themselves construed the Agreement as one requiring all employees of the defendant to be members of the Union.

This argument, however, is based upon a strained construction and is deemed to be without merit. It overlooks the fact that in the Agreement itself the Union, although it is specifically recognized as the bargaining agent for all employees of the defendant, is nevertheless referred to and described in the first paragraph in the same way as in all subsequent amendments, as "the International Union, United Mine Workers of America, hereinafter referred to as Mine Workers, on behalf of each member thereof * * *"

The recognition clause is clear and unequivocal and is in no way modified by the language referred to. Reading the recognition clause and the language in question together the reasonable meaning of the contract is that the duty of the Union to represent all employees is clearly recognized, and that the words "on behalf of each member thereof" are merely descriptive of the Union itself and do not define or limit the class of persons represented by it in making the contract.

The Agreement also contains the following checkoff provision:

"The membership dues, including initiation fees, and assessments of the United Mine Workers of America and its various subdivisions, as authorized and approved by the International Union, United Mine Workers of America, shall be checked off the wages of the employees by the Operators covered by this contract and shall be remitted by the Operators to the properly designated officers of the Mine Workers for distribution to its various branches. Such remittances shall be accompanied by an itemized statement showing the name of each employee and the amount checked off for dues, initiation fees and assessments together with a list of employees from whom dues, initia-

tion fees and assessments have not been collected.

"In order that this section may become effective and operate within the limitations of the 'Labor-Management Relations Act, 1947' the Mine Workers hereby agree to furnish, with all reasonable dispatch to the respective Operators, and the Operators agree to aid, assist and cooperate in obtaining written assignments from each employee so employed. Upon the presentation to the Operators of such assignments in such reasonable form as time and circumstances, looking to the continuous and uninterrupted production of coal, may allow, said Operators shall make deductions so authorized and deliver the same to the designated District Officer of the Mine Workers or to such authorized representative as may be designated by the Mine Workers."

With reference to this provision of the Agreement it is argued by the defendant in its brief as follows:

"Said section of the collective agreement of 1950 either means that the agreement provides for and the parties have agreed to have a union shop, as permitted by the Federal Act, which violates the law of the State of Tennessee, where, among other places, the agreement was to be performed. Or it means that the union and the operators agreed to check off dues, fees and assessments of the union from all employees whether they belonged to the union or not and if this be the proper interpretation of the section, it violates both the Federal Act and the state law. The two meanings indicated are the only two interpretations that can be given to this section of the contract * * *"

In this connection it is to be borne in mind that there is a well recognized presumption that parties intend to execute a valid rather than an invalid agreement. Hestand v. Johnson, 182 Tenn. 84, 87, 184 S.W.2d 175. That con-

struction which will preserve the validity of the Agreement should be adopted by the court if it can reasonably be done without doing violence to the intention of the parties. Certainly it is also true that a strained and unnatural construction of an Agreement should not be employed.

In Tennessee there is no provision regulating the use of a checkoff provision in a collective bargaining agreement, but Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186, provides:

"Sec. 302. (a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce.

* * * * *

"(c) The provisions of this section shall not be applicable * * * (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; * * *"

Reading the checkoff provision of the present Agreement in its entirety, it seems clear that the parties intended to contract with reference to the provisions of the Labor Management Relations Act and to provide for a checkoff of dues only with respect to employees from whom written assignments had been obtained as permitted by that Act. The clause cannot fairly be construed to require a checkoff of dues from the wages of all employees irrespective of such written assignments. Nor can the Agreement be construed as providing for the discharge of employees from employment for failure to pay union dues or assessments.

In the defendant's answer it is alleged that "in the performance of said contract, the defendant was required by the plaintiffs to employ * * * only persons who were or became members of the United Mine Workers of America and to check membership dues off the wages of all its employees in Tennessee and to remit same to the United Mine Workers". The defendant insists that such conduct violates the Tennessee right-to-work statute and hence that the plaintiffs cannot recover in the action. In any event it is argued that the practice should be looked to as indicating the practical construction of the contract by the parties as requiring a union shop. The allegation in the answer must be accepted as true for the purpose of disposing of the defendant's contention, but even accepting its correctness, it does not follow that the plaintiffs' motion for summary judgment should be overruled or that a material issue of fact is presented. This is true because at most the practice, not authorized by the contract itself, would show that the union and the company violated the applicable law. It would not alter or change the terms of the Agreement which, as above noted, provides in effect that neither a closed shop nor a union shop is required by the contract unless it is in conformity with the law of the state where the contract is to be performed. Neither does the Court regard the practice as in any wise relevant in determining the intention of the parties as to the meaning of the contract. For the contract itself is not ambiguous. As the Court construes its pertinent language, it plainly does not require membership in the union as a condition of employment in states having statutes making such a condition unlawful. It is axiomatic that the practical construction by the parties to a contract as shown by their conduct is not considered unless the contract itself is uncertain or ambiguous in meaning. Fidelity-Phenix Fire Ins. Co. of New York v. Jackson, 181

228

Tenn. 453, 181 S.W.2d 625; McQuiddy Printing Co. v. Hirsig, 23 Tenn.App. 434, 134 S.W.2d 197.

 In a supplemental brief the defendant takes the position that the provision in the Agreement that "as a condition of employment employees shall be, or become, members of the United Mine Workers of America, to the extent and in the manner permitted by law" also violates the Labor Management Relations Act, 29 U.S.C.A. § 158(a) (3). That section makes "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization" an unfair labor practice. But this argument cannot be accepted in view of the savings clause in the Agreement which, as the Court has construed it, does not authorize a union shop in states where it is prohibited by local law. The defendant in arguing that the savings clause in the instant case is not adequate to protect the Agreement relies upon a number of cases, including N.L.R.B. v. Gottfried Baking Co., 2 Cir., 210 F.2d 772; N.L.R.B. v. E. F. Shuck Const. Co., 9 Cir., 243 F.2d 519; N.L.R.B. v. Gaynor News Co., 2 Cir., 197 F.2d 719; Red Star Express Lines of Auburn v. N.L.R.B., 2 Cir., 196 F.2d 78. However, the clauses in those cases were deemed to be so vague and uncertain that they could not reasonably be given the effect of saving the validity of the contracts involved. Moreover, in most of the cases cited, the so-called savings clauses actually were not savings clauses in the real sense of the term but rather were intended to have the effect of deleting from the Agreement any provision which might be held later to be invalid. That is not the situation in the present case where the savings clause as noted is clear and unequivocal. This contention of the defendant appears to be fully answered, at least in principle, by the decision of the Supreme Court in N.L.R.B. v. Rockaway News Supply Co., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832.

In view of the conclusions herein reached a judgment will be entered sustaining the motion of the plaintiffs for summary judgment, granting the plaintiffs a recovery, and denying the defendant's motion for summary judgment. It has been represented to the Court that in the event of judgment for the plaintiffs, the amount of the recovery can be settled by the parties.