John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Plaintiffs-Appellees,

v.

QUALITY COAL CORPORATION, an Indiana Corporation, Defendant-Appellant.

No. 12562.

United States Court of Appeals Seventh Circuit.

Aug. 18, 1959.

Rehearing Denied Sept. 24, 1959.

Schnackenberg, Circuit Judge, dissented.

N. George Nasser, John R. Jett, Terre Haute, Ind., for appellant.

Louis D. Nattkemper, Terre Haute, Ind., Harold H. Bacon, Washington, D. C., Dewey & Nattkemper, Terre Haute, Ind., Val J. Mitch, Washington, D. C., M. E. Boiarsky, Charleston, W. Va., for appellees.

Before DUFFY, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiffs John L. Lewis, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America [1] Welfare and Retirement Fund, by their second amended complaint, in the district court sought recovery of a money judgment against Quality Coal Corporation, an Indiana corporation (herein called Quality), defendant, based upon agreements known as The National Bituminous Coal Wage Agreement of 1950 as Amended Effective September 1, 1955 as Amended Effective October 1, 1956, herein referred to as the 1950 agreement, or the agreement.

Quality answered, denying *inter alia* that it owed any money, and averring that said agreement was invalid.

Plaintiffs and Quality each filed a motion for summary judgment. In opposition to plaintiffs' motion and in support of its own motion, Quality attached 10 affidavits.

The district court found that "there is no genuine issue of fact to be submitted to the trial court as to plaintiffs' motion for summary judgment" and thereupon entered judgment accordingly. The district court found, however, that "a question of fact is raised by defendant's motion for summary judgment," and that "defendant is not entitled to judgment as a matter of law"; it thereupon denied Quality's summary judgment motion. By its judgment the district court ordered and decreed that plaintiffs recover of Quality the sum of $84,176.40, with interest and costs. Quality has appealed, seeking our review of the actions of the district court.

Plaintiffs' second amended complaint makes the following material averments:

Plaintiffs are trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 created by contract dated March 5, 1950.

Quality signed the National Bituminous Coal Wage Agreement effective September 1, 1955, and a similar Agreement effective October 1, 1956, in which it agreed to pay forty cents (40¢) per ton for all coal produced during these periods of time; [2] during the dates herein mentioned, Quality produced 210,440.99 tons of coal and by virtue of said contracts, it was indebted to the plaintiffs in the sum of $84,176.40.

The record reveals no dispute as to the correctness of the foregoing recital.

Quality denies the validity of the agreement as being contrary to law, and hence says it is not indebted to plaintiffs. Quality contends, on several grounds,

---

[1]. United Mine Workers of America are herein sometimes called the Union.

[2]. Between October 1, 1955 and November 30, 1957.

that, as a matter of law, the judgment below should be reversed.

■ 1. It contends that plaintiffs cannot sue as trustees, for the reason that no trust has ever arisen or been established as to the money sued for, because no money had ever been transferred or delivered to the alleged Fund. However, the agreement provides:

> "Title to all moneys paid into and or due and owing said Fund shall be vested in and remain exclusively in the Trustees of the Fund, * * *."

Under this language a trust was created, the corpus of which was any money transferred or delivered by Quality to the trustees for the purposes of the agreement or which Quality became obligated to transfer to the trustees for that purpose. We hold that a trust was created.

■ 2. The agreement sued on provides:

> " * * * It is further agreed that as a condition of employment all employees shall be, or become, members of the United Mine Workers of America, *to the extent and in the manner permitted by law* * * *."

(Italics supplied.)

Quality contends that this language provides for a closed shop, thus violating 29 U.S.C.A. § 158(a) (3), which reads:

> "(a) It shall be an unfair labor practice for an employer—
>
> * * * * * *
>
> "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in this sub-chapter, * * * shall preclude an employer from making an agreement with a labor organization * * * to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later * * *."

The provisions of § 158(a) (3) do not prohibit as unfair labor practice, or invalidate, collective bargaining agreements requiring union membership as a condition of employment provided becoming such a member may be deferred to or after the thirtieth day following the beginning of employment, or effective date of the agreement, whichever is later.

Of course, without the portion italicized above the provisions of the agreement here under consideration would violate § 158. Lewis v. Jackson & Squire, D.C., 86 F.Supp. 354. It would, without reservation or limitation as to time of joining, require union membership as a condition of employment. But the qualifying phrase "to the extent and in the manner permitted by law" expressly modifies and limits the application of the clause relating to union membership so that any requirement it imposes is conditioned on conformity to existing or future law. The provision of the agreement relating to union membership is thus limited and qualified by its expressed terms so that it imposes no requirement as a condition of employment which would conflict with 29 U.S.C.A. § 158(a) (3) or any other law.

Lewis v. Fentress Coal & Coke Co., D. C., 160 F.Supp. 221, 224 (affirmed 6 Cir., 264 F.2d 134), involved the same contract now before us. It was held that the union membership provision did not violate a Tennessee statute prohibiting contracts making union membership a condition of employment nor violate 29 U.S.C.A. § 158(a) (3). The District Court referred to the language "to the extent and in the manner permitted by law" as a "savings clause". We are dubious as to whether such description was apt. The language employed is not couched in the form usually employed in a so-called "savings clause". It is language which serves to restrict and modify the words of the same sentence in which it is employed and relates to that subject matter alone. Here the meaning and intent of the contractual provision involved is fully expressed in one sentence. No general requirement is im-

posed, limitations on which must be searched for in some other separate provision or clause of the contract. The qualified condition imposed is expressed as one complete provision. Its application is not to be measured by some standard found elsewhere in the contract. We agree, however, with the view expressed by the District Court in Fentress that the phrase in question is "clear and unequivocal".

We further agree with Fentress that cases such as N. L. R. B. v. Gottfried Baking Co., 2 Cir., 210 F.2d 772; N. L. R. B. v. Gaynor News Co., 2 Cir., 197 F.2d 719 and Red Star Express Line of Auburn v. N. L. R. B., 2 Cir., 196 F.2d 78 are distinguishable. In Gottfried the agreement contained a union security provision which on its face and by its very terms was illegal. The court found that a separate "savings clause" was "too lacking in specificity" to prevent the preferential hiring provision from constituting an unfair labor practice. Gaynor involved a contract containing a union security provision also by its terms illegal. The court found that a general savings clause "which only postponed" the issue of the legality of the closed shop provision for future determination by some proper tribunal did not prevent the provision from being a violation of law. In Red Star Express Lines the union security provision was concededly illegal under the Taft-Hartley Act. The parties to the contract by letter agreed upon an addendum which, because of its vague language, the court found did not have the effect of preventing the security provision from being a violation of the Act.

In the instant case validity of the union membership provision is not dependent upon some vague or indefinite savings clause. Its validity is assured and protected by the very language in which the condition of union membership is stated. This is not the case of a provision illegal by its terms which must be sustained, if at all, by resort to some independent general savings clause. It is a case where the provision is qualified by its own terms so that it meets the test

of legality. We conclude that the union membership provision in question does not violate 29 U.S.C.A. § 158(a) (3).

■ The validity of the agreement is not affected by any conduct or practice of the parties which would constitute an unfair labor practice under 29 U.S.C.A. § 158(a) (3). At most, such conduct or practice, not authorized by the agreement itself, would show that the Union and Quality violated applicable law. It would not alter or change the terms of the agreement. Lewis v. Fentress, D.C., 160 F.Supp. 221 (227).

■ 3. Quality further contends the agreement is void because of duress. It relies, in this respect, on allegations of its Answer that because of concerted activities and threats by the union it executed the agreement in order to avoid strikes and work stoppages, and on the affidavit of its president that he executed the agreement against his free will and that of the corporation. In American Brake Shoe Co. v. N. L. R. B., 7 Cir., 244 F.2d 489, we recognized that the right to engage in a lawful strike is a protected concerted activity. The threat to cause a legal strike and its attendant work stoppage does not of itself constitute duress. And mere inequality in economic bargaining power is not legal unfairness which will permit either party to avoid a contract. Birmingham v. Bartels, 8 Cir., 157 F.2d 295. We find no merit in Quality's claim of invalidity of the agreement because of duress.

■ 4. Quality's contention that the agreement is unenforceable because of lack of mutuality likewise lacks substance. A collective bargaining agreement, such as the one containing the Welfare and Retirement Trust Fund provisions herein involved, is as against the employer, a "contract". Corbin on Contracts (1951), Vol. 6, Sec. 1420, Pg. 621. Collective bargaining contracts are enforceable against the employer. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 461, 75 S.Ct. 489, 99 L.Ed. 510.

5. The contention that indispensable parties are lacking is fully answered by our decision in Lewis v. Quality Coal Corp., 7 Cir., 243 F.2d 769, 770, 772, cf. United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 220, 77 S.Ct. 793, 1 L.Ed.2d 776; United States v. Embassy Restaurant, 358 U.S. 811, 79 S.Ct. 42, 3 L.Ed. 2d 55.

The judgment of the District Court is therefore

Affirmed.

SCHNACKENBERG, Circuit Judge.

I must dissent. I believe we are required by the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq., to hold this agreement unlawful, and that the defense of illegality is good. It is admitted that sec. 158(a) (3) of said Act forbids a closed shop agreement. The agreement upon which plaintiffs sue provides:

"* * * It is further agreed that as a condition of employment all employees shall be, or become, members of the United Mine Workers of America, to the extent and in the manner permitted by law. * * *"

Moreover, admitted facts [1] in the record show that in the operation under the agreement at Quality's mines a closed shop has been rigorously maintained.

Faced with the defense of illegality, plaintiffs seek refuge in what they call a "savings clause" reading: "to the extent and in the manner permitted by law". Here is a group of vague words which may have been fashioned to accommodate a general form of contract to the diverse labor laws of various states, i. e., Lewis v. Fentress Coal & Coke Co., D.C., 160 F.Supp. 221, 227. Certainly the language of sec. 158(a) (3) of the *federal* act does not "permit" a closed shop to *any extent* or in *any manner*, and no one argues that it does. Hence, the words of the "savings clause" exclude their applicability to the prohibition of sec. 158(a) (3) of the federal act. Moreover, the meaning of this ambiguous language is settled for the purposes of this case by the interpretation which the Union and Quality have, in performance, placed upon it. By their strict maintenance of a closed shop, they have realistically interpreted it as "saving" the closed shop, the federal act to the contrary notwithstanding. Of course, in a court of law, where a federal act and a private contract conflict, the contract must fall. It becomes wholly unenforcible, especially where, as here, it contains a provision to the effect that all parts are dependent on each other.[2] The effect of this very provision was emphasized by Judge, now Justice, Stewart, in Lewis v. Benedict Coal Corp., 6 Cir., 259 F.2d 346, 354.

Moreover, the agreement before us lacks a separability clause, such as appeared in the contract in the Rockaway case (N. L. R. B. v. Rockaway News Supply Co., 345 U.S. 71, 78, 73 S.Ct. 519, 97 L.Ed. 832) unjustifiably relied on by plaintiffs here.

The term "saving clause" is well known to legislative draughtsmen. It is used to save pending matters from the effect of amendatory or repealing legislation. 82 C.J.S. Statutes § 440, p. 1014. In its unique application to this case, however, its venerable purpose is perverted and it is being used to breathe

1. An employee when hired had to join the Union by the morning of the third day or get fired, and, if a nonunion employee refused to join, then the union employees would refuse to work on instructions from the Union.

The constitution of the Union states simply:—

"That all members of the organization shall refuse to work in and around a mine where a man or men work that does not belong to the Union."

No new employees were permitted to work for Quality more than three days (not thirty days) if they did not join the Union.

2. INTEGRATED INSTRUMENT—This Agreement is an integrated instrument and its respective provisions are interdependent * * *.

life into a private contract which admittedly, but for the saving clause, contains a provision violating an act of Congress. This contract is now sanctioned by this court. As far as this case is concerned, by judicial decision a part of a federal act has in effect been repealed. The act was not saved; a contractual provision in violation of the act is saved.

The majority opinion would rely upon the possibility of a union shop being permissible under the agreement before us. The term union shop is used to indicate the situation where the employer is permitted to employ non-union workers, but such workers are required to join the union as a requisite to continuing work. 90 C.J.S. p. 1044. The right to make an agreement for a union shop is recognized by a proviso in § 158(a) (3) of the federal Act:

"* * * That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer *from making an agreement* with a labor organization * * * to require as a condition of employment membership therein *on or after the thirtieth day* following the beginning of such employment or the effective date of such agreement, whichever is the later, * * *." (Italics supplied.)

However, there is no contention by anyone in the case at bar that the Union and Quality ever made an *agreement* for a union shop, which is necessary under the foregoing proviso, and as recognized by analogy in the recent case of Railway Employes' Dept. v. Hanson, 351 U.S. 225, 231, 232, 76 S.Ct. 714, 100 L.Ed. 1112, construing 45 U.S.C.A. § 152, Eleventh (a). No agreement for a union shop was made. An act of congress does not create an agreement. No union shop agreement exists in this case. There is only an invalid closed shop agreement, and the parties, by their conduct, have shown that that is the only agreement which they recognize.

I agree with the reasoning of the Second Circuit, in N. L. R. B. v. Gottfried Baking Co., 210 F.2d 772, at page 779:

"The preferential hiring clause contained in the three contracts above-described was clearly illegal as it excludes new applicants at the threshold if they are not members of the Union in good standing, and deprives them of the thirty-day grace period within which they might become members after being hired. We think that the mere execution of a contract containing such a provision, even apart from its actual enforcement, constitutes 'discrimination in regard to hire' on the part of an employer and hence falls squarely within the prohibition of Section 8(a) (3). For, as this Court, in so holding, stated in Red Star Express Lines of Auburn v. N. L. R. B., 2 Cir., 196 F.2d 78, 81, 'the existence of such an agreement without more tends to encourage membership in a labor organization. The individual employee is forced to risk discharge if he defies the contract by refusing to become a member of the union.' See also N. L. R. B. v. Childs Co., 2 Cir., 195 F.2d 617. Since the Union joined in the execution of the contracts containing these illegal provisions and assisted in enforcing them, it follows that the Union 'cause[d] * * * an employer to discriminate against an employee in violation of [Section 8] (a) (3)', thus violating Section 8(b) (2). N. L. R. B. v. National Maritime Union of America, 2 Cir., 175 F.2d 686, certiorari denied 338 U.S. 954, 70 S.Ct. 492, 94 L.Ed. 589.

"Nor is it of consequence, as the respondents contend, that each of the contracts contained a 'saving clause,' the intended effect of which was to salvage as much union security as possible should the preferential hiring provisions be invalidated. The inclusion of this vague 'saving clause' in each contract does not purge the preferential hiring provisions of their illegal effect. Red Star Express Lines of Auburn v. N. L. R. B., supra; N. L. R. B.

v. Gaynor News Co., 2 Cir., 197 F.2d
719, certiorari granted 345 U.S. 902,
73 S.Ct. 640, 97 L.Ed. 1339, rear-
gument ordered 345 U.S. 962, 73 S.
Ct. 947, 97 L.Ed. 1382, affirmed by
Supreme Court on February 1,
1954."[3]

To the same effect is the recent case of
N. L. R. B. v. Broderick Wood Prod. Co.,
10 Cir., 261 F.2d 548, 557.

I would reverse.

---

3. See Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., 347 U.S. 17, 44, 45, 46, 51, 52, 74 S.Ct. 323, 98 L.Ed. 455.