John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs,

v.

F. Arnold LOWRY, individually, and trading as the Lowry Coal Company, Defendant.

Civ. A. No. 673.

United States District Court
W. D. Virginia,
at Abingdon.
Nov. 5, 1960.

---

4. See United States v. De Vivo, D.C.N.Y.1961, 190 F.Supp. 483, and cases cited therein.

Fund the sum of 40 cents per ton on each ton of coal produced for use or for sale. The complaint further alleged that during the period of May 1, 1955, through August 31, 1958, the defendant produced approximately 131,988.5 tons of coal whereby there became due the Fund the amount of $52,795.40, and further that the defendant has paid only $3,264 of this debt, leaving a balance due and owing the plaintiffs of $49,531.40. Plaintiffs seek recovery of this amount with interest and costs.

Following an answer by the defendant on March 17, 1959, in which he alleged that he signed the above-named instruments under duress, and that the parties to the instruments did not intend the instruments to be effective, and that it was only meant as a "sham", the plaintiffs moved for a summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in the amount of $49,531.40.

The plaintiffs conceded in their motion for summary judgment that Lowry, individually, had not been engaged in the production of coal after August 31, 1958, when the business was incorporated. The plaintiffs thus seek summary judgment for the balance due on coal produced by the defendant, individually, only during the period of May 1, 1955, through August 31, 1958, rather than through January 31, 1959, as the complaint had alleged.

The case is now before this Court on this motion for summary judgment upon the pleadings, interrogatories, depositions, affidavits, exhibits, stipulations, and the record at large, and the able briefs and arguments of counsel.

The facts show that the agreements which the parties had entered into on the three occasions were the National Bituminous Coal Wage Agreement of 1950 as amended September 29, 1952, September 1, 1955, and October 1, 1956. This agreement provides for a payment to the Fund a sum of 40 cents per ton of

---

Joseph N. Cridlin,* Jonesville, Va., Val J. Mitch, Harold H. Bacon and T. G. Dudley, Washington, D. C., for plaintiff.

Fred B. Green, Robert T. Winston, Norton, Va., and James Green, Jr., Harlan, Ky., for defendant.

DALTON, District Judge.

The plaintiffs, John L. Lewis, Henry G. Schmidt and Josephine Roche, Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, filed a complaint in this Court on February 16, 1959, against the defendant alleging that the defendant and the United Mine Workers, on three separate occasions, in 1952, 1955, and 1956, had entered into agreements whereby the defendant was required to pay into the

---

* Joseph N. Cridlin, Jonesville, Va., withdrawn as counsel for plaintiff on Jan. 12, 1961, and Clyde Y. Cridlin, Jonesville, Va., entered as counsel in lieu thereof.

coal produced for sale or use. The parties have agreed and stipulated that Lowry has produced, during this period from operations in and about Harlan County, Kentucky, 131,988.50 tons of coal. The defendant has already paid $3,264 to the Fund, and the parties agree that if there is liability it is on the amount of $49,531.40.

The defendant in his answer raised two defenses to the complaint:

1. That the contracts upon which the plaintiffs base their claim were signed under duress and are void.

2. That at the time the contract was signed the representative of the United Mine Workers advised the defendants that the execution of the agreement was a mere formality or "sham" and they would have to pay only what they could and would not have to comply with the strict 40-cent per ton requirement set forth in the contract.

The defendant does not allege any acts of duress at the time of the entering of the agreements. In fact, in his affidavit, he states that no threats were made to him. His defense of duress seems to be based on a general history of violence and labor strife associated with Harlan County, Kentucky. In his affidavit he asserts that had he not signed his workers would have been threatened, his trucks stopped, and his business destroyed. From the entire record the Court is unable to find facts to substantiate duress.

■ Duress is actual or threatened constraint, contrary to law, exercised upon a person whereby he is forced to do some act that he otherwise would not have done. Defendant admits there were no acts or threats constituting coercion when the agreements were signed. He does not allege threatened walk-outs or strikes or picketing of his business; all he asserts is that he knew from the long history of violence connected with United Mine Workers in Harlan County that he had better sign the agreements.

Businessmen in this modern world of local, state, and federal government protection of commercial and private activities are not coerced by such intangibles. What the defendant alleges does not amount to duress as a matter of law.

■ The defendant's other contention is that all parties, when the contracts were entered into, intended the agreements as a mere formality or "sham" contract and that the coal company would only have to pay what they could into the Fund, and would not have to comply strictly with the terms of the agreement. Such a defense would do violence to the requirement of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., giving either party the right to request a written agreement embracing the entire agreement of the parties. Moreover, such a defense would open the door to varying solemn written contracts by prior oral agreements, and would do much toward tearing down our basic acceptance of the strength and importance to be given to written agreements. This contention becomes untenable when a close survey of the record clearly shows that the defendant did subsequently comply with the 40-cent per ton requirement. Even if at the time of the execution of the contracts there was no intention that the same were to be binding, then the partial compliance by the defendant with the terms of the contracts clearly ratified those provisions of the contracts. This ratification is strengthened still further by the evidence showing that letters of advice relating to the amounts due passed between the parties, and that defendant acted, in connection with union assessments and dues, so that the men in the mines might assume that they were operating under a valid agreement, and that employees applied for and accepted benefits under the plan. In this manner he received consideration in the production of the coal from the men who worked in the mines and were members of the union.

Evidence also which seems cogent to this Court is the fact that defendant made payments during the entire alleged period and always made payments based on 40 cents per ton of the tonnage reported. A comparison of the tonnage

figures reported by Lowry to the Fund (Exhibit E) and the figures supplied by Lowry in the interrogatories taken on April 6, 1959, shows a great discrepancy between the two. The conclusion which must be reached is that Lowry did recognize the terms of the agreement but minimized his payments to the Fund by failing to report the full production.

The Court, (although cautious and somewhat reluctant in granting summary judgment), having examined all the facts, is of the opinion that there is no material fact upon which reasonable minds could differ or from which varying inferences could be drawn. Therefore, for the reasons heretofore stated, the plaintiffs' motion for summary judgment is granted, and an order will be entered granting judgment in favor of plaintiffs against the defendant for the sum of $49,531.40, plus interest from date of judgment and costs.