John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, Plaintiffs

v.

William G. GILCHRIST, Jr., individually, and doing business as G. & R. Coal Company; and William G. Gilchrist, Jr. and William G. Gilchrist III, individually and doing business as G. & R. Coal Company, a partnership, Defendants.

Civ. A. No. 3398.

United States District Court
N. D. Alabama,
Northeastern Division.

April 6, 1961.

Cooper, Mitch, Black & Crawford, Birmingham, Ala., and Harold H. Bacon, Washington, D. C., for plaintiffs.

Baker, Young, Young & Baker, Knoxville, Tenn., and Harris & Harris, Decatur, Ala., for defendants.

GROOMS, District Judge.

This cause came before the Court on plaintiffs' motion for summary judgment directed to all issues raised by defendants' original answer, and the first and second amendments to said answer, and on defendants' motion for summary judgment directed to the eleventh defense of said amended answers, pursuant to the provisions of Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. No jury trial was demanded by either party.

Plaintiffs' John L. Lewis, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter referred to as the Fund), an irrevocable trust created under the terms of the National Bituminous Coal Wage Agreement of 1950, pursuant to the authority of Section 302(c) (5). Labor Management Relations Act, 1947 (hereinafter referred to as the Act), 29 U.S.C.A. § 186(c) (5), filed a complaint against the defendant, William G. Gilchrist, Jr., individually and doing business as G. & R. Coal Company, alleging the defendant and the United Mine Workers of America, executed the National Bituminous Coal Wage Agreement of 1950, as Amended Effective October 1, 1952, and as Amended Effective September 1, 1955 (hereinafter referred to as the 1952 and 1955 contracts), under the terms of which contracts defendant was required to pay to plaintiffs a royalty of 40¢ per ton for all coal produced for use or sale, and that defendant produced coal under said contracts during the period July 1, 1953 through October 31, 1956.

Thereafter, by proper motion, plaintiffs filed an amended complaint consisting of two counts alleging during the period July 1, 1953 through December 31, 1955, the defendant, William G. Gilchrist, Jr., operated the G. & R. Coal Company as an individual, but that during the period January 1, 1956 through October 31, 1956, the defendants, William G. Gilchrist, Jr. and William G. Gilchrist, III, operated the company in partnership. As of November 1, 1956 the business was incorporated.

The first count directed to defendant William G. Gilchrist, Jr., alleges that during the period July 1, 1953 through December 31, 1955, the defendant produced 138,836.40 tons of coal resulting in royalty due and owing plaintiffs of $55,534.56, of which defendant paid $6,841.82, leaving a balance of $48,592.74 for which plaintiffs seek judgment. The second count directed to defendants William G. Gilchrist, Jr., and William G. Gilchrist, III, individually and as partners, alleges that during the period January 1, 1956 through October 31, 1956, the defendants produced 52,864.40 tons of coal, resulting in royalty due and owing to plaintiffs of $21,145.76, of which defendants paid $2,643.22, leaving a balance of $18,502.54 for which plaintiffs seek judgment. While defendants stated they were unable to respond to interrogatories directed to them seeking to determine the actual number of tons of coal produced for use or sale during the period here involved because the company's record had been stolen, the parties stipulated that the defendants produced the number of tons of coal and made the total payments to the Fund representing royalty as stated in both counts of the amended complaint.

The defendants contend that the contracts sued upon are unenforceable because they were signed under duress and, at the same time contend that the contracts were not in fact binding because they were a mere "sham" or "pretence." The defendants' contention as to duress for the most part is based upon the alleged circumstances related to the execution of an agreement prior to those involved in this case. The defendants allege that the contracts which were executed by reason of duress were also executed with the understanding that they were to be subject to certain oral terms and conditions which were dictated to the Union prior to the execution of the contract which rendered the contract a

mere "sham" and "pretence" and created no obligations on the part of the company.

Defendants contend the 1952 contract was executed by the company after the assurance of the union that the prior conditions of no obligations on the part of the company applied, though contending at the same time this contract was executed by defendant, Gilchrist, Jr., under duress. The record is barren of any such threats or coercion as to this contract. As to the 1955 contract, the same contentions and allegations are raised. However, neither defendant was present when the contract was executed by an office manager. The defendants had no contact with the union in regard to the execution of this contract, and the record is equally barren of the alleged force or coercion necessary to support duress. It is alleged only that the office manager was informed the execution was merely a matter of form.

Under the 1952 and 1955 contracts, defendants made payments to the Fund representing royalty on coal produced during the contract periods. Not only were such payments made to the Fund each month, but the company indicated, on forms required to be submitted with the payments, that the company was submitting royalty payment on all coal produced for use or sale at the full royalty rate of 40¢ per ton. In addition, defendant Gilchrist, Jr., as did at least eighteen of his employees, applied for the right to receive benefits of the Fund. While defendant Gilchrist, Jr., did not require payment of Fund benefits after receiving the right to receive them, at least sixteen of his employees participated substantially in the Fund hospital-medical plan, and one employee received a $100 per month pension, and death benefits were paid on his behalf.

The Court has examined all of the facts and issues raised by the pleadings, the many and detailed affidavits submitted by both parties, the depositions filed in the record, and fails to find any material fact or inferences to be drawn from the admitted facts which must be resolved by a trial.

To allow the defendants to escape liability on the grounds that the contracts were "not in reality or in fact agreements", but were a "sham" and were executed "merely to create the appearance" that the defendants were signatories to these collective bargaining agreements, would "do violence to the requirement of the National Labor Relations Act * * * giving either party the right to request a written agreement embracing the entire agreement of the parties", Lewis v. Lowry, D.C.W.D.Va., 190 F.Supp. 490, 492. Such action would do equal violence to the recent ruling of the Supreme Court that under the "national labor policy, we hold that parties to a collective bargaining agreement must express their meaning in unequivocable words * * *", by which the Court was carrying out the mandate of congress under "Section 301 [authorizing] federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, 1 L. Ed.2d 972]" Lewis v. Benedict Coal Corp., 361 U.S. 459, 470–471, 80 S.Ct. 489, 496, 4 L.Ed.2d 442. Gatliff Coal Company v. Cox, 6 Cir., 152 F.2d 52, affirmed the lower court's holding that "collateral agreements" cannot bring about the diminution of the obligations under a collective bargaining agreement, regardless of the circumstances that may be relied upon to justify them or the terms thereof.

Defendants' action in paying a part of the royalty due under the contract in such manner as to lead the Fund to believe that the full amount of the royalty at the contract rate of 40¢ per ton was being paid, further negates defendants' contention of a "sham" contract, since this is clear evidence of ratification and acceptance of the contract. Further, the Fund made payment of benefits to defendants' employees, and even the defendant Gilchrist, Jr., applied for the

right to receive benefits, which the Fund was required to pay as a matter of law. Section 302(c) (5) of the Act. The defendants transformed the alleged "pretense" into reality by their own actions. Thus, the clear pronouncement of the national labor policy, both by Congress and judicial decision, plus the actions of the defendants, require the defense, that these contracts were but a "sham", be denied.

The defense raised by defendants that the contracts of 1952 and 1955 were executed by reason of threats and coercion on the part of the union, and that such threats and coercion continued during the period of the contracts de hors the records. The alleged duress is based upon defendant Gilchrist, Jr.'s knowledge of the history of union violence in "Illinois" beginning in 1946, and the statements made to said defendant by union representatives in 1949, which is considered as admitted for the purpose of plaintiffs' motion. However, neither the contract involved in 1949, nor evidence of the subsequent action of defendants, is before this Court and it is not necessary to determine whether or not such action would constitute duress so as to void that contract. As to the 1952 and 1955 contracts which are before this Court, both by affidavit and deposition, the defendant Gilchrist, Jr., presents a picture devoid of duress. The 1952 contract, it is alleged, was executed only after assurance that it would create no obligations for the company, and the 1955 contract was executed by an authorized employee without conference or contact by either defendant with the union. Prior knowledge of union violence is the sole remaining predicate for duress. In an almost identical case, Lewis v. Lowry, supra, the Court correctly denied such contention, stating, 190 F.Supp. at page 492: "Businessmen in this modern world of local, state, and federal government protection of commercial and private activities are not coerced by such intangibles."

■■ It is basic that duress in the execution of a contract renders the contract voidable not void, and that the person upon whom the duress is practiced may ratify and affirm thus validating the contract, and, if to avoid same, must elect to rescind within a reasonable time, Lewis v. Kerns, D.C.S.D.Ind., 175 F.Supp. 115, 118. Here the defendants clearly ratified and affirmed at least that part of the contract pertaining to the Fund and accepted benefits which flowed from the Fund. As stated in Lewis v. Cable, D.C.W.D.Pa., 107 F.Supp. 196, 197–198, "the defendant cannot by his acts and declarations pretend to be bound by the Agreement so as to prevent strikes and repercussions and then, when full liability under said Agreement is asserted, seek to disaffirm it." The defendants, having operated under these contracts for a period of over four years, having failed to elect to rescind and having at least partially ratified the Fund's provisions "are now estopped to deny the validity of the contracts." Lewis v. Kerns, supra [175 F.Supp. 119.]. "It would appear to be unconscionable to permit the defendants to assert this defense at this late date." Lewis v. Harlan Everglow Coals, Inc., D.C.E.D.Ky., 188 F. Supp. 4, 9, and defendants' defense of duress as to the 1952 and 1955 contracts must therefore be denied.

■ Defendants further contend, and move for summary judgment on the grounds that the Fund is invalid and the contracts unenforceable because the trust instrument creating the Fund, and contained in the National Bituminous Coal Wage Agreement of 1950, violates the provisions of Section 302(c) (5) (B) of the Act, in that the detailed basis upon which payments from the Fund were to be made are not specified in the agreement. The contract in question provides that the "detailed basis upon which payments" will be made by the Fund "shall be resolved in writing" by the Trustees "at their initial meeting."

That the Trustees resolved in writing the detailed basis upon which benefits would be paid, is attested to by the affidavit of plaintiff Josephine Roche, which stands uncontradicted. The Court

in Lewis v. Hixson Coal Co., D.C.W.D. Ark., 174 F.Supp. 241, 251–252, recognized the detailed basis upon which payments would be made by the Fund had been reduced to writing. In addition, there are numerous reported decisions in the United States District Court for the District of Columbia in which the Court has determined the right of an applicant to receive benefits of the Fund based upon the written eligibility requirement prepared by the Trustees pursuant to their obligation under the trust instrument. It has been specifically held that provisions creating the prior Fund of 1947, identical to those now before this Court, did not "violate either the letter or spirit of [Section 302(c) (5)]". Van Horn v. Lewis, D.C.D.C., 79 F.Supp. 541, 545. Defendants cite no authority or reason to require this Court to hold the Fund invalid on the presumption potential beneficiaries could not determine their rights. To the contrary, the record is clear that the defendant, William G. Gilchrist, Jr., and numerous of his employees were cognizant of their rights under the Fund, having applied for the right to receive benefits and having been granted benefits. The Court finds no merit in defendants' contention as to this point.

Several other defenses were raised by defendants. The defense that the union security clause contained in the contract is violative of the "right-to-work" statute of the State of Tennessee, Sections 50–208 to 50–210, T.C.A., was specifically answered in Lewis v. Fentress Coal and Coke Company, D.C. M.D.Tenn., 160 F.Supp. 221, affirmed per curiam, 6 Cir., 264 F.2d 134, and for the same reasons therein stated must here be denied. The contention that the contracts here involved are illegal and unenforceable because of violations of the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1 and 2) and violation of Section 69–112, T.C.A., having been orally withdrawn by defendants at the pre-trial conference, it is not necessary for the Court to consider these issues.

For the reasons heretofore stated, and the Court being of the opinion that there is no genuine issue as to any material fact requiring a trial on the merits and that the plaintiffs are entitled to a judgment as a matter of law; it is hereby:

Ordered, that plaintiffs' motion for summary judgment is in all respects granted and that defendants' motion for summary judgment as to the eleventh defense contained in the amended answers to the amended complaint is denied; and it is further

Ordered, adjudged and decreed,

(1) That, during the period July 1, 1953, through and including December 31, 1955, the defendant, William G. Gilchrist, Jr., individually and trading as the G. & R. Coal Company, produced 138,-836.40 tons of coal for use or sale on which a royalty of 40¢ a ton was due and owing to plaintiffs in the amount of $55,-534.56; of which sum defendant paid $6,-941.82, leaving a balance due and owing by the defendant to the plaintiffs of $48,-592.74;

(2) That, during the period January 1, 1956, through and including October 31, 1956, the defendants, William G. Gilchrist, Jr., and William G. Gilchrist, III, individually and trading as the G. & R. Coal Company, a partnership, produced 52,864.40 tons of coal for use or sale on which a royalty of 40¢ a ton was due and owing to the plaintiffs in the amount of $21,145.76, of which sum defendants paid $2,643.22, leaving a balance due and owing by these defendants to the plaintiffs of $18,502.54; and

(3) That plaintiffs, John L. Lewis, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, shall recover of the defendant, William G. Gilchrist, Jr., the sum of $48,592.74, with interest at the rate of six per cent per annum from the 10th day of January, 1956, amounting to $15,306.71, or a grand total of $63,899.-45, and the costs of this action.

(4) That the plaintiffs, John L. Lewis, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950, shall recover of the defendants, William G. Gilchrist, Jr., and William G. Gilchrist, III, the sum of $18,502.-54, with interest at the rate of six per cent per annum from the 10th day of November, 1956, amounting to $4,913.-17, or a grand total of $23,415.71, and the costs of this action.

For all of which execution may issue in the time and manner provided by law.